Marilynn T. KUTCH, Appellant,

v.

DEL MAR COLLEGE, et al., Appellees.

No. 13–91–285–CV.

Court of Appeals of Texas,
Corpus Christi.

May 21, 1992.

Martha P. Owen, Vans Os, Deats, Rubinett & Owens, Austin, for appellant.

Frank E. Weathered, Dunn, Cason & Weathered, Lev Hunt, Hunt, Hermansen, McKibben & Barger, Shirley Selz, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellees.

Before GILBERTO HINOJOSA, KENNEDY and SEERDEN, JJ.

## OPINION

GILBERTO, HINOJOSA, Justice.

Appellant was dismissed from her job as a secretary at Del Mar College. She filed suit alleging wrongful dismissal. Initially, her husband represented her in this suit. Special exceptions were levied against the petition. A new petition was filed; however, many of the problems associated with the first petition were not cured in the second petition.

The trial court heard arguments on the special exceptions and on December 19, 1990, it granted them. The court set January 18, 1991, as a deadline for the new petition.

The deadline was not met. A hearing was held on a motion to dismiss and a motion for extension of time to replead. The trial court granted appellee's motion and dismissed the cause with prejudice. A motion for new trial was filed. At this motion appellee argued that the trial court's ruling was sustainable as a sanction. Appellant challenges the trial court's

actions by three points of error. We modify the trial court's judgment, and as modified, affirm.

■ By appellant's first point of error she argues that the trial court erred in sustaining appellees' special exceptions to her petition. The trial court has broad discretion to sustain special exceptions and order more definite pleadings as a particular case may require. *See Hubler v. City of Corpus Christi,* 564 S.W.2d 816, 820 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Thus, we review the trial court's actions under the abuse of discretion standard of review.

■ The test for determining if the trial court abused its discretion is whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). If the trial court acts in an arbitrary or unreasonable manner, it abuses its discretion. *Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989); *Downer,* 701 S.W.2d at 241–42; *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984). The trial court does not necessarily abuse its discretion if under the same facts an appellate judge would decide the matter differently, or if the court commits a mere error in judgment. *Loftin,* 776 S.W.2d at 146; *Downer,* 701 S.W.2d at 242; *Southwestern Bell Tel. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965). This court will reverse a trial court's rulings if it abuses its discretion and the error is harmful. Tex.R.App.P. 81(b)(1). *See generally Landon v. Jean–Paul Budinger, Inc.,* 724 S.W.2d 931, 935–36 (Tex.App—Austin 1987, no writ) (discussing the standard).

We have reviewed the pleadings and the special exceptions. Many paragraphs in the plaintiff's petition are overbroad and arguably do not provide reasonable notice of the factual basis of the claims. The trial court did not abuse its discretion in sustaining many of these special exceptions. Appellant's first point of error is overruled.

Appellant's second point complains that the trial court erred in dismissing her petition with prejudice. She argues that this is not a case in which she elected to stand on her pleadings and test the trial court's ruling on review, or a case in which the pleadings did not state a valid cause of action. Rather, this is a case in which she desired to replead but did not meet the court's deadline. We must overrule this point and affirm if the trial court's ruling is sustainable on any theory supported by the pleadings and the evidence. *Guarantee County Mutual Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986).

As set forth above, special exceptions were levied against the first petition. Thereafter, the plaintiff filed a FIRST SUPPLEMENTAL ORIGINAL PETITION. Many of the defects which appeared in the plaintiff's ORIGINAL PETITION were not cured. A hearing was held. The trial court entered an order permitting the plaintiff to file an amended petition by January 18, 1991.

Prior to January 18, 1991, the plaintiff filed a motion for extension of time to file the second amended petition. This motion was denied. The defendants filed a motion to dismiss. A hearing was held, and the cause dismissed with prejudice.

■ Generally, a trial court cannot dismiss a plaintiffs' entire case with prejudice if the pleadings state a valid cause of action, but are vague, overbroad, or otherwise susceptible to valid special exceptions. The proper remedy is to dismiss without prejudice. *See Hajdik v. Wingate,* 753 S.W.2d 199, 202 (Tex.App.—Houston [1st Dist.] 1988) *affirmed on other grounds,* 795 S.W.2d 717 (Tex.1990).

■ In the instant case, a number of valid causes of action were pleaded, although inartfully. Remaining portions of the pleadings stated valid causes of action. Thus, the trial court's ruling dismissing the cause with prejudice is not sustainable on special exception grounds. *Id; D.A. Buckner Const., Inc. v. Hobson,* 793 S.W.2d 74, 75–76 (Tex.App.—Houston [14th Dist.] 1990, no writ).

Appellees argue that dismissal with prejudice was proper as a sanction for violation of the pretrial order to replead. *See Kos-*

*low's v. Mackie,* 796 S.W.2d 700, 704 (Tex. 1990) (affirming dismissal with prejudice for violation of a pretrial order). Texas courts have a statutory and rule based power to sanction. *See e.g.* TEX.R.CIV.P. 215; TEX.GOV.CODE ANN. § 82.061 (Vernon 1990). No case has yet determined whether Texas courts also have an inherent, common law power to sanction similar in scope to the federal power. *See Chambers v. NASCO, Inc.,* —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

To determine whether the trial court's dismissal with prejudice is sustainable as a sanction, the first issue we must address is whether the trial court has authority to sanction this conduct. This sanction does not relate to discovery. Thus, the rules governing discovery sanctions do not apply. *See* TEX.R.CIV.P. 215. The sanction order did not state "good cause" as required by TEX.R.CIV.P. 13,[1] and there is no allegation of groundless pleadings. Thus, this sanction may not be justified under TEX.R.CIV.P. 13. We have found no other statute or rule expressly authorizing sanctions for this violation of the court's order to re-plead.

■ The issue presented is whether the trial court had some other authority to assess sanctions for this type of conduct. We hold Texas courts have inherent power to sanction for bad faith conduct during litigation. *See e.g. Chambers,* 111 S.Ct. at 2134 (federal courts have inherent power to sanction for bad faith conduct).

In *Chambers,* a similar issue was presented: whether a federal district court has inherent powers to sanction abusive conduct not expressly covered by federal sanctions rules. The Supreme Court of the United States held that federal courts have such inherent power. Although ill defined, the Court recognized this power is quite potent, and should be used only with great restraint and discretion. *Id.* at 2133.

Significantly, the Court reasoned that this power is derived from certain institutional aspects all courts possess, including the power to "impose silence, respect, and decorum, . . . and submission to their lawful mandates;" the power to "punish for contempts;" and the power to dismiss for "failure to prosecute." *Id.* Texas courts, like all civilized courts of justice, have these inherent powers. *Public Util. Comm'n v. Cofer,* 754 S.W.2d 121, 124 (Tex.1988); *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398–400 (Tex.1979); *see e.g. Worldwide Anesthesia v. Bryan Anesthesia,* 765 S.W.2d 445, 447 (Tex.App.—Houston [14th Dist.] 1988, no writ) (courts have express or implied power to dismiss or render a default judgment to ensure orderly administration of justice). Thus, the Supreme Court's reasoning is persuasive authority for the proposition that Texas Courts have certain other inherent powers as well, including the power to sanction for bad faith abuse of the judicial process.

Our review of Texas case law reveals that Texas Courts possess significant inherent powers. For example, Texas courts have the power to impose contempt. *Ex*

---

1. Rule 13 provides:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. Attorneys or parties who shall bring a fictitious suit as an experiment to get an opinion of the court, or who shall file any fictitious pleading in a cause for such a purpose, or shall make statements in pleading which they know to be groundless and false, for the purpose of securing a delay of the trial of the cause, shall be held guilty of a contempt. If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215–2b, upon the person who signed it, a represented party, or both.

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. A general denial does not constitute a violation of this rule. The amount requested for damages does not constitute a violation of this rule. TEX.R.CIV.P. 13.

*Parte Pryor*, 800 S.W.2d 511, 512 (Tex. 1990). Texas courts have the power to appoint a master. *Simpson v. Canales*, 806 S.W.2d 802, 810 (Tex.1991). Texas courts have the inherent power to compel expenditure of public funds for essential court functions. *Mays v. Fifth Court of Appeals*, 755 S.W.2d 78, 80 (Tex.1988) (Spears, concurring); *Vondy v. Commissioners Court of Uvalde County*, 620 S.W.2d 104, 109–110 (Tex.1981). Texas courts have the power to insure adversary proceedings despite statutes providing otherwise. *Cofer*, 754 S.W.2d at 124.

Significantly, in *Mackie v. Koslow's*, 774 S.W.2d 741, 743 (Tex.App.—El Paso 1989) *reversed Koslow's v. Mackie*, 796 S.W.2d 700 (Tex.1990), the appellate court held the trial court did not have authority under Rule 215 or any other rule to impose a sanction for violation of a pre-trial order. The Supreme Court of Texas reversed holding the trial court did have such authority under Rule 166. Rule 166 does not provide for sanctions. However, the Court sustained the trial court's power to sanction because "the trial court had the power implicit under Rule 166 to provide in his pretrial order that the refusal to participate in the status conference or the failure to file a timely joint status report would result ... [in] dismissal, default, or other sanctions ..." *Id.* at 703.

The Supreme Court of Texas has recently reaffirmed the position that Texas courts have inherent powers which are necessarily derived from the judiciary's status as a co-equal branch of the government. *See Cofer*, 754 S.W.2d 121, 124 (Tex.1988). The *Cofer* Court relied on *Eichelberger*, wherein the Court expressly recognized that:

> The *inherent* judicial power of a court is not derived from legislative grant or specific constitutional provision, but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities. The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity.

*Id.* 582 S.W.2d at 398. The scope of these powers has been unclear. We write today to clarify the scope of inherent powers to sanction.

■ The power to compel compliance with valid orders incident to the administration of justice is fundamental, and closely related to the core functions of the judiciary. We expressly recognize this power today. Consequently, we hold that Texas Courts have the inherent power to sanction for abuse of the judicial process which may not be covered by rule or statute. This power includes the power to sanction appropriately for failure to comply with a valid court order incident to one of the core functions of the judiciary.

■ Recognizing this power, we also recognize certain limitations. *Eichelberger* recognized the linkage between the inherent power and a court's administration of justice. The Court of Criminal Appeals has more clearly refined and identified this concept by articulating the core functions of the judiciary, which are: hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, entering final judgment and enforcing that judgment. *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239–40 (Tex.Crim.App.1990). Inherent power to sanction exists to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of Texas courts. Accordingly, for inherent power to apply, there must be some evidence and factual findings that the conduct complained of significantly interfered with the court's legitimate exercise of one of these powers.

■ In addition, other limitations exist. The amorphous nature of this power, and its potency, demands sparing use. The best practice is to rely upon the rules and statutes expressly authorizing sanctions whenever possible. *See Chambers*, 111 S.Ct. at 2135–36.

■ We also recognize that the legislature's lawmaking powers may operate to limit certain exercises of inherent power.

*See e.g. Dow Chemical Co. v. Alfaro,* 786 S.W.2d 674, 679 (Tex.1990) (the legislature has the power to abolish forum non-conveniens).[2] Most importantly, the rights of litigants may not be infringed by the abusive exercise of this power. This point merits further discussion.

■■■■■ Due process limits a court's power to sanction. *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909); *Tate v. Commodore County Mutual Ins. Co.,* 767 S.W.2d 219, 225 (Tex.App.—Dallas 1989, no writ). The traditional Due Process protections of notice and hearing are also necessary before imposition of sanctions. *Sears Roebuck & Co. v. Hollingsworth,* 156 Tex. 176, 293 S.W.2d 639, 642 (Tex.1956); Tex.R.Civ.P. 215(2)(b).

In *Transamerican Natural Gas v. Powell,* 811 S.W.2d 913 (Tex.1991) the Court, relying on Due Process principles, limited imposition of death penalty[3] sanctions to circumstances in which a party has exhibited flagrant bad faith or callous disregard for discovery rules or court orders raising the inference that a party's claims lack merit. *Transamerican,* 811 S.W.2d at 918; *see National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976).

Additionally, the *Transamerican* Court wrote:

> In our view, whether an imposition of sanctions is just is measured by two standards. First, a direct relationship must exist between the offensive conduct and the sanction imposed. This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party. It also means that the sanction should be visited upon the offender. The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. This we recognize will not be an easy matter in many instances. On the one hand, a lawyer cannot shield his client from sanctions; a party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. On the other hand, a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation. The point is, the sanctions the trial court imposes must relate directly to the abuse found.
>
> Second, just sanctions must not be excessive. The punishment should fit the crime. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. It follows that courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance.

*Id.* 811 S.W.2d at 917.

Significantly, *Koslow's* recognized that a court's "implicit" power to sanction was governed by the justness or appropriateness standard which was later developed in *Transamerican*. *Koslow's,* 796 S.W.2d at 703–4 n. 1. At least these limits constrain exercise of inherent powers, regardless of their form.

■■■■■ Having found that trial courts have an inherent power to sanction for certain conduct which affects the core functions of the judiciary, we must now determine if the conduct sanctioned was properly subject to this inherent power. As described above, the inherent power is strongest, and most powerful when the conduct complained of interferes with one of the core functions of the judiciary. Violation of a court order relating to the court's management and administration of

---

2. Of course the legislature's power to limit exercises of inherent powers cannot impair the traditional ability of a Texas courts to function as courts. *Armadillo v. State,* 802 S.W.2d 237, 239–40 (Tex.Crim.App.1990) (separation of powers doctrine limits the legislature's ability to restrict core functions of the judiciary).

3. The death penalty refers to a sanction which terminates the litigation either by striking pleadings, rendering a default judgment, or both.

a particular legal claim generally will be a significant interference with one or more of the judiciary's functions. In the instant case, appellant's failure to replead after being given a chance to do so inhibited the court's and the other litigant's abilities to determine what evidence and legal issues are relevant to this suit. This is a significant interference with the administration of justice. We hold the evidence supported the trial court's assessment of some sanction for this conduct based on its inherent power.

■ The next issue is whether the trial court's dismissal of appellee's lawsuit with prejudice exceeded its limited inherent power to sanction for abuse of the judicial process. Initially, we must determine what standard of review to apply.

■ Two standards of review could apply to this issue, the de novo standard or the abuse of discretion standard. *Koslow's* applied the abuse of discretion standard. In *Home Owners Funding Corp. v. Scheppler*, 815 S.W.2d 884, 889 (Tex.App.—Corpus Christi 1991, no writ), this Court carefully considered and decided that the abuse of discretion standard of review applied to TEX.R.CIV.P. 13 sanction orders. *HOFCA*, in turn relied in part upon *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), which applied the abuse of discretion standard of review to FED.R.CIV.P. 11 sanction orders. *Chambers* applied the abuse of discretion standard in reviewing sanction orders under the federal court's inherent powers. In accordance with this line of authority we hold the abuse of discretion standard of review applies in determining whether the trial court properly exercised its inherent powers to sanction.

■ Properly applying the abuse of discretion standard for sanction orders requires us to review the entire record. We review the conflicting evidence in the light most favorable to the trial court's ruling, and draw all reasonable inferences therefrom which sustain the judgment. *Vaughn v. Texas Emp. Comm'n*, 792 S.W.2d 139, 143 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Hlavinka v. Griffin*, 721 S.W.2d 521, 524 (Tex.App.—Corpus Christi 1986, no writ). We will reverse or modify the judgment only if the error is harmful. TEX.R.APP.P. 81(b)(1).

The evidence showed that one reason why the pleadings were not timely amended was that a new lawyer had not been found. The reason why a new lawyer was needed was because the old lawyer was the plaintiff's husband. Serious (and obvious) conflicts existed. A new lawyer who is representing appellant on appeal had been contacted, but had not been retained as of the date of the hearing on the motion to dismiss. The search for new counsel had taken at least five months. An additional reason for the failure to replead was appellant's husband/lawyer was tied up in court immediately prior to the January 18 deadline. Cross examination revealed, however, that the conflict problem was clear at the inception of this suit. It also showed that appellant's husband/lawyer was well informed about the factual allegations in the suit. This raised the inference that he could have repleaded.

Although the evidence supports the trial court's ruling that appellant's reasons for the delay were unsatisfactory, we must determine whether "death penalty" sanctions are appropriate under the standards set forth in *Transamerican*. If the evidence does not support "death penalty" sanctions under *Transamerican*, we must conclude that the trial court abused its discretion in assessing such sanctions in this case.

Our first inquiry under *Transamerican* is whether a direct relationship between the abuse and the sanction exists. Dismissal of appellant's petition with prejudice for failure to replead is a sanction directly related to the violation of the court's order to replead. However, the sanction most strongly effects the client, and not the offending party, her attorney.

■ The second inquiry is whether the sanctions were excessive. The legitimate purposes of sanctions must be furthered by the sanction order, but not excessively. These purposes are to secure compliance,

deter future violations, and punish violators. *Bodnow v. City of Hondo*, 721 S.W.2d 839, 840 (Tex.1986). We first look to see if lesser sanctions were imposed or considered by the trial court in order to secure compliance.

Except for the court's order granting the defendant's special exceptions and permitting appellant to replead, no lesser sanctions were assessed by the trial court to encourage compliance.[4]

 An additional factor supporting severe sanctions is a finding of callous disregard for the rules or flagrant bad faith. *Transamerican*, 811 S.W.2d at 918. We find no evidence in the record that the failure to replead was motivated by flagrant bad faith or callous disregard for the trial court's order. Although appellant failed to timely replead, a motion for extension of time to replead was filed, and supported by evidence adduced at the hearing. A new petition was tendered at the motion for new trial. The old petition alleged facts supporting a valid cause of action; thus the presumption that appellant's claims lack merit is absent. Under these circumstances, the dismissal with prejudice violated appellant's due process rights. *Transamerican*, 811 S.W.2d at 918. The punishment for this "crime" was excessive.

We hold that the trial court abused its discretion in striking appellant's pleadings and dismissing the cause with prejudice.

 The final issue we must address is whether the error is harmful.[5] Tex. R.App.P. 81(b)(1). We have reviewed the pleadings on file. Even after the special exceptions are taken into account, they allege sufficient facts to sustain a valid cause of action for wrongful dismissal. No motion for summary judgment with supporting evidence has been filed to controvert the facts alleged in the pleadings.

Thus, we find the error harmful. *Id.* Appellant's second point of error is sustained.

We modify the trial court's ruling to delete the words "with prejudice," and as modified, affirm.

---

4. Lesser sanctions such as an order assessing a fine or attorney's fees might have resulted in compliance with the court's order to replead. Appellant's counsel appeared at the motion for new trial and requested leave to file an amended pleading which she stated cured all the problems associated with the earlier pleading. Counsel was not permitted to file this pleading.

5. Dismissal with prejudice is not necessarily harmful error. For example, if the pleadings did not state a valid cause of action the dismissal could have been harmless.