Shook v. Gilmore & Tatge Mfg. Co., et al. 















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-014-CV

     JAMES R. SHOOK,
                                                                                              Appellant
     v.

     GILMORE & TATGE MANUFACTURING CO., ET AL.,
                                                                                              Appellees
 

From the 82nd District Court
Falls County, Texas
Trial Court # 87-11-29,448-CV
                                                                                                    

DISSENTING OPINION
                                                                                                    

      This is, as far as I can determine, the only case in American jurisprudence in which a court
has sanctioned a litigant for using death threats to try to extort a settlement. What is significant
about the majority's opinion is, first, their reluctance to explicitly hold that a Texas court has the
inherent power to sanction a litigant for such conduct and, second, their refusal to hold that such
conduct raises the presumption that the extortionist's claims lack merit. I believe the court had
the inherent power to impose the "death penalty" based on a reasonable presumption that a person
who attempts to extort a settlement by using death threats has a meritless claim. Accordingly, I
would affirm the judgment in its entirety. For these reasons I respectfully dissent.
INHERENT POWER TO SANCTION
      Although alluding to the inherent power to sanction, the majority side-steps the question of
whether the court could exercise its inherent power to sanction Shook's flagrant bad-faith conduct. 
That Texas courts have inherent powers they can rely on to protect their dignity, independence,
and integrity and to aid in the administration of justice is well-recognized. Eichelberger v.
Eichelberger, 582 S.W.2d 395, 398-99 (Tex. 1979). Also "well-acknowledged" is the inherent
authority to sanction bad-faith litigation practices. Roadway Exp., Inc. v. Piper, 447 U.S. 752,
100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing Link v. Wabash R. Co., 370 U.S. 626, 82
S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)). This includes the power to dismiss. Link, 82 S.Ct.
at 1390. The Texas Supreme Court, in fact, recently recognized the "comprehensive" inherent
power of a court to sanction counsel for abusive conduct occurring during litigation. Remington
Arms Co., Inc. v. Hon. Benjamin Martinez, 36 Tex. Sup. Ct. J. 547, 550 (February 10, 1993). 
Another court of appeals has already recognized the inherent power to sanction abusive litigation
practices. Kutch v. Del Mar College, 831 S.W.2d 506, 509 (Tex. App.—Corpus Christi 1992,
no writ). This power is also recognized elsewhere. J.D. Page & Doug Sigel, The Inherent and
Express Powers of Courts to Sanction, 31 S. Tex. L. Rev. 43, 46 (1990).
      Notwithstanding the ample authority supporting the inherent power of a court to sanction
flagrant bad-faith trial conduct, the majority refuses to apply the inherent power recognized in
Remington because the court sanctioned Shook and not his counsel. The inherent power to
sanction extends equally to litigants and counsel. Roadway Exp., Inc., 100 S.Ct. at 2464. If, as
the majority implies, the inherent power to sanction only operates against counsel and not the
parties, a court would be left to the mercy of litigants, unable to protect its integrity,
independence, or the administration of justice from their abusive trial conduct. What an
incongruity! I would expressly hold that the court had the inherent power to sanction Shook for
the most egregious conduct ever sanctioned in Texas—attempting to extort a settlement by death
threats.
CONSTRAINTS ON INHERENT POWER
      The ultimate constraint on use of the death penalty is constitutional due process. See
TransAmerican Natural Gas Corp. v. Powell, 811 S.W.2d 913, 917-18 (Tex. 1991); Insurance
Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102 S.Ct. 2099,
2105-06, 72 L.Ed.2d 492 (1982); Societe Internationale v. Rogers, 357 U.S. 197, 78 S.Ct. 1087,
1094, 2 L.Ed.2d 1255 (1958); Hammond Packing Co. v. Arkansas, 212 U.S. 322, 29 S.Ct. 370,
379-80, 53 L.Ed. 530 (1909). The constitutional limitation has been reiterated: "Consistent with
due process guarantees, death penalty sanctions should be used only when the sanctioned party's
conduct `justifies a presumption that its claims or defenses lack merit.'" Remington Arms Co.,
Inc., 36 Tex. Sup. Ct. J. at 549 (quoting Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 850 (Tex.
1992)). Due process is preserved whenever the presumption of a meritless claim or defense arises
from a party's conduct and the claim or defense is stricken. Societe Internationale, 78 S.Ct. at
1094-95.
      I believe the due-process constraint requires the trial court always to use a lesser sanction
unless the party's bad-faith conduct justifies a presumption that his claim or defense lacks merit. 
Only then can the court impose the death penalty without violating due process. Id. This is
because substantive due process protects meritorious claims or defenses, not meritless ones. Thus,
the due-process constraint is merely a corollary of the second requirement in TransAmerican: The
sanction imposed must not be excessive. TransAmerican Natural Gas Corp., 811 S.W.2d at 917. 
Unless the offending party's conduct will justify the presumption, the death penalty will always
be excessive. Therefore, the court must resort to lesser sanctions until the party's recalcitrant
conduct will support the presumption. This means that the court can never strike a meritorious
claim or defense without violating due process. However, a court can never abuse its discretion
or violate substantive due process, assuming the sanctioned party is granted procedural due
process, by striking a meritless claim or defense. There can be no constitutional implications,
injury, or harm in doing so. 
      Essentially, the difference in the majority's view and mine is simple. We disagree on whether
Shook's conduct justifies a presumption that his claims lack merit. I believe it does; the majority
believes otherwise. If they are correct, a lesser sanction should have been used. However, if my
view is correct, the death penalty was properly used against Shook's meritless claims.
      The majority concludes that his claims have merit because other plaintiffs had already settled
their cases with the defendants. Shook has the burden of showing error requiring a reversal. See
Tex. R. App. P. 50(d). Thus, he must demonstrate in the record that the court violated his right
to due process by striking meritorious claims. None of the settlement papers of other parties
appear in this record, and for all we know any settlement with other parties was premised on the
usual blanket denial by the defendants of any wrongdoing or liability. Just because a claim is
settled does not mean it has merit. 
SHOOK'S ATTEMPTED EXTORTION
      Shook admitted that he used death threats against the defendants and their counsel in an
attempt to force a settlement of his claims. These threats continued even after the sanction
hearing. His actions amounted to attempted extortion, pure and simple. If Shook's calculated
attempt to extort a settlement by death threats does not justify a presumption that he has a meritless
claim, then I cannot imagine what other flagrant, abusive conduct will raise it. His conduct is no
different than any other person using death threats to extort money. If the presumption is not
justified by his conduct, then a person attempting to extort money from a bank cannot be presumed
to have a meritless claim to the bank's money. I believe one can reasonably presume that a person
who must resort to death threats in an attempt to force a settlement has a meritless claim. Using
the death penalty to strike a meritless claim does not violate due process and cannot be excessive. 
Societe Internationale, 78 S.Ct. at 1094-95. 
      The alpha and omega of the judiciary is to administer justice fairly and impartially in a forum
and in an atmosphere where the rule of law prevails. Regardless of how one breaks this core
function into its various parts, the administration of justice is at the very center of the judiciary's
existence. Shook's admitted behavior, calculated scheme, and motivating purpose so defile the
institution of the judiciary and the administration of justice that only the severest of sanctions can
remove the lingering, corrosive effect of his actions. Indeed, so reprehensible is his conduct that,
search as I might, I cannot find another case even approaching this one in egregious bad faith. 
Surely a court must have the inherent power to protect itself and the administration of justice from
Shook's litigation practices. To hold otherwise ignores the very reason for the judiciary's
existence.
TRANSAMERICAN STANDARDS MET
      The first requirement of TransAmerican is met—the sanction is clearly levied against the
offending party, Shook. See TransAmerican Natural Gas Corp., 811 S.W.2d at 917. The second
requirement—the sanction must not be excessive—has also been met. See id. The death penalty
cannot be excessive when used against a meritless claim. Accordingly, I would hold that it was
warranted and properly imposed under the court's inherent power. Shook used death threats
against all of the defendants and their attorneys. Thus, I would affirm the judgment in its entirety.
 
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Dissenting opinion delivered and filed March 3, 1993
Publish