In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00021-CV
______________________________


ALBERT LYNN BARCROFT, Appellant
 
V.
 
COUNTY OF FANNIN, STATE OF TEXAS, ET AL., Appellees


                                              

On Appeal from the 6th Judicial District Court
Fannin County, Texas
Trial Court No. 35286


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          This is a lawsuit in which Albert Lynn Barcroft, in his claimed capacity as a
"sovereign," sued Fannin County, the City of Paris, various public officials and peace
officers, as well as a body shop, and Curtis Rives. Barcroft's lawsuit is based on the entry
onto his property by a number of peace officers, pursuant to a search warrant, and having
a trailer (that the officers believed to have been stolen) towed away from his property. 
Barcroft also alleges the officers rifled his personal belongings and stole cash from his
house.
          The defendants filed special exceptions against Barcroft's petition on a number of
grounds, including claims that his allegations were too vague, that the petition failed to
state any cause of action known to law, that it failed to set out any justiciable controversy
that could be addressed by the court, as well as raising affirmative defenses suggesting
that the matters raised by Barcroft's pleadings were not matters for judicial determination,
but were matters properly brought before the Legislature. The defendants also complained
that Barcroft was claiming he was suing as a "sovereign" and therefore could not recover. 
          The trial court afforded Barcroft an opportunity to amend his petition to change the
status in which he brought his lawsuit, but Barcroft refused. The trial court then rendered
judgment dismissing Barcroft's petition "with respect to Plaintiff's claimed status as a
'sovereign.'" The court found that Barcroft had declared himself a sovereign; that, in that
status, he lacked standing to proceed; and that Barcroft was barred by the Texas
Constitution from appearing as an independent sovereign not subject to the laws of Texas. 
The court ordered the action dismissed with prejudice because Barcroft had no standing
and could not recover in the capacity of a "sovereign." 
          We have reviewed the petition filed by Barcroft. It alleges the named persons and
entities violated his constitutional rights in various respects, ranging from allegations of
trespass and illegal entry, along with "unauthorized use of [the sovereign's] Land" and
deprivation of personal property, to theft of money by one of the police officers who entered
his house and wrongful photographing of his personal effects.
          Barcroft raises a number of arguments on appeal, all centering around his position
that the actions of the trial court violate his constitutional rights. He specifically contends
the court denied him a "republican form of government," that it denied him, as "one of the
sovereign American People," access to the courts solely because of his national origin, that
doing so violated his due process rights, that the court violated the separation of powers
clause by failing to follow the rules set out by the Legislature, and that the trial court's ruling
constitutes a violation of the contract between the government and the "sovereign people." 
          The issue is whether the trial court erred by dismissing Barcroft's lawsuit for the
reasons stated. The various appellees have filed briefs which primarily take aim at the
merits of Barcroft's underlying lawsuit. This is a dismissal on the pleadings. The trial court
did not purport to rule on the merits of the case, and we cannot address those matters. 
          There are a number of problems with the posture of this case. First, the dismissal
could be read to be based on one of two conclusions stated in the judgment: Barcroft
either lacked standing to bring suit, or had a lack of capacity to recover. Those two terms
are related, but are not interchangeable. A lack of standing is jurisdictional in nature and
may be raised at any point in the proceeding. A lack of capacity is not jurisdictional. 
          The distinction is this: a plaintiff has standing when he or she is personally
aggrieved, regardless of whether he or she is acting with legal authority; a party has
capacity when it has the legal authority to act, regardless of whether he or she has a
justiciable interest in the controversy. Nootsie, Ltd. v. Williamson County Appraisal Dist.,
925 S.W.2d 659, 661 (Tex. 1996); see Pledger v. Schoellkopf, 762 S.W.2d 145, 146 (Tex.
1988). Capacity is thus a party's legal authority to go into court and prosecute or defend
a suit. Davis v. City of Houston, 869 S.W.2d 493, 494 n.1 (Tex. App.‒Houston [1st Dist.]
1994, writ denied).
          It therefore follows that, for a plaintiff to bring a suit and recover on a cause of
action, the plaintiff must have both capacity and standing. El T. Mexican Rests., Inc. v.
Bacon, 921 S.W.2d 247, 250 (Tex. App.‒Houston [1st Dist.] 1995, writ denied). 
          The judgment refers to both concepts as its basis for dismissal. Because it is
jurisdictional, we first look at the standing issue. Determining whether Barcroft has
standing appears to be complicated because he explicitly seeks to recover, not as a person
who is a citizen of either Texas or of the United States, but as a specific type of entity
which he describes as "one of the sovereign American People." The complication,
however, is illusory.
          Barcroft seeks monetary damages based on alleged trespass and invasion, theft
of property, and conversion, among other things. We do not now review the merits of
those claims because they are not before us. However, we must recognize that Barcroft's
claims at the very least reflect personal grievances which might ultimately result in a
recovery. Thus, the bare minimum necessary to show standing has been achieved and
the trial court could not properly dismiss on that basis.
          The next question is whether Barcroft has the ability to recover in the capacity in
which he filed suit. That is the more difficult question. The trial court adjudged that
Barcroft could not recover "in the capacity as a 'sovereign.'"
          Barcroft's argument is based on cases and constitutional interpretations that stretch
back to a period predating the Civil War. Barcroft has attempted to make use of the legal
system, while at the same time contending that legal system, or some portion of it, does
not apply to him because he is a "sovereign," or perhaps "one of the sovereign American
People" or a "sovereign citizen." Regardless of how described, his basic position is that
there is more than one level of citizenship within the United States and that he is of one
particular level which has, in some manner, rights that an individual at a different level of
citizenship does not. 
          His argument is based on language found in Dred Scott v. Sandford, 60 U.S. 393,
403 (1857). In relevant part, that opinion addressed the issue of whether a "negro" who
was a slave could become a member of the 
political community formed and brought into existence by the Constitution of
the United States, and as such become entitled to all the rights, and
privileges, and immunities, guarantied [sic] by that instrument to the citizen? 
One of these rights is the privilege of suing in a court of the United States in
the cases specified in the Constitution.

          The Court stated that "citizens" and "people of the United States" were synonymous
terms, that those people were the "sovereign people," and that every citizen is one of these
people and a constituent member of this "sovereignty." The Court then engaged in an
extensive historical discussion of prior law and the documents that form the basis of the
United States, and acknowledged that "negroes" historically were not considered as
citizens–but as property–and therefore the protections of the Constitution could not apply
to allow them to exercise the right of a citizen to file suit. The Court had to engage in some
rather nimble writing to avoid the apparent fact that members of the "negro race" were
nevertheless humans, and contrived its discussion of the citizenship of the people of the
nation as a method of avoiding that (even to the 1856 Court) obvious reality. 
          That is merely the preliminary portion of the Dred Scott analysis, which then veered
into other areas, including the question of whether, because of Scott's or his family's
presence in a United States territory which did not recognize slavery, his status altered
sufficiently to permit him to file suit, and also addressed the constitutionality of the Missouri
Compromise law. 
          Barcroft's claimed status is, at this point in our history, imaginary. With the
conclusion of the Civil War and the implementation of the constitutional amendments
following the conflict, although at one point the law of the land at least contemplated
different classes of inhabitants–although not different classes of citizens–that portion of the
Dred Scott decision was overrun by events and is no longer any more than a historical
footnote in our jurisprudence. There is no dichotomy between different citizens, and there
are not two classes of citizens in the United States. The "sovereign" language on which
Barcroft relies is part of the Court's analysis determining who may constitute a citizen by
reviewing which "classes" of individuals were treated as such at the time of the creation of
the Constitution. With the ending of the Civil War and the enactment of legislation and
constitutional amendments after that time, such an analysis became unnecessary; the
classification distinctions based on race on which Chief Justice Taney relied no longer
exist, by constitutional fiat. See U.S. Const. amends. XIII, XIV. We cannot countenance
Barcroft's position that he is a "sovereign" of any description, or that he is in any way
possessed of constitutional rights that exceed or differ from those of other citizens. 
          Barcroft also supports his argument with caselaw that states there are two classes
of citizens in America. His statement, in one sense, is correct. However, in context, those
decisions refer to the fact that citizens of the United States are subject to two governments,
federal and state, and that they owe allegiance to both. See State ex rel. Wettengel v.
Zimmerman, 24 N.W.2d 504, 506 (Wis. 1946). These cases do not, however, support his
contention that multiple types of federal citizens exist which enjoy differing levels of status.
          We acknowledge that, in one sense of the word, as described by Barcroft in his
brief, the authority of the Union derives from the people, and thus they are the true
"sovereigns" of the nation. That fact does not, however, support his conclusion that there
is a classification of sovereign citizenry that differs from the rank and file citizenry.
          Barcroft filed suit claiming a capacity to recover under this claimed status. The
status does not exist. The question is what effect this may have on his ability to continue
with this lawsuit. We have found no cases directly on point and thus must resort to
analogous situations. We recognized in Miller that "[i]t has long been settled that the
'estate' of a decedent is not a legal entity and may not sue or be sued as such." Miller v.
Self, No. 06-02-00129-CV, 2003 WL 21696955, at *1 (Tex. App.‒Texarkana July 23, 2003,
no pet.) (citing Price v. Estate of Anderson, 522 S.W.2d 690, 691 (Tex. 1975)). Similarly,
there are a legion of cases addressing situations where businesses and/or individuals who
sue in a capacity which they do not have or who are sued in an incorrect capacity may
neither pursue a lawsuit nor be found liable in a lawsuit. For example, though a failure to
file an assumed name certificate does not render a plaintiff's claim void, it does, like the
failure to pay a corporate registration fee, affect such plaintiff's ability to recover in litigation
brought in that capacity. Sixth RMA Partners, L.P. v. Sibley, 111 S.W.3d 46, 55 (Tex.
2003); cf. Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d 880,
884-85 (Tex. 2001) (holding corporation's failure to pay registration fee for conducting
business in Texas affects its capacity to sue); Nootsie, Ltd., 925 S.W.2d at 661 ("[A] party
has capacity when it has the legal authority to act, regardless of whether it has a justiciable
interest in the controversy.").
          Similarly, it is long-settled law that, to impose liability on a party, a plaintiff must sue
the party in the capacity from which that plaintiff seeks to recover. Thus, a suit against a
person named individually seeks to impose personal liability on the individual being sued,
while a suit against the person as an agent of a corporation or other business interest
attempts to impose liability against the business.
          Yet another variation is found in lawsuits brought against a person in an official
capacity where a plaintiff is actually seeking to impose liability against the governmental
unit the sued person represents, rather than on the individual specifically named. Vela v.
Rocha, 52 S.W.3d 398, 403 (Tex. App.‒Corpus Christi 2001, no pet.) (citing Kentucky v.
Graham, 473 U.S. 159, 165 (1985)). In that scenario, the suit is in actuality one against
the governmental unit, which is the legal entity that will be held liable for any judgment
rendered against the individual sued in an official capacity. Graham, 473 U.S. at 165-66.
          In this case, Barcroft brought his litigation to court in a capacity that does not exist
and he seeks to recover based only on that capacity. He was offered and declined the
invitation to amend his pleading to correct the defect. We must therefore conclude the trial
court did not err by dismissing the lawsuit based on a lack of capacity. 
          We now turn to the remaining question of whether the trial court erred by not merely
dismissing the lawsuit, but by dismissing with prejudice. Dismissal with prejudice
constitutes an adjudication on the merits and operates as if the case had been fully tried
and decided. Mossler v. Shields, 818 S.W.2d 752, 754 (Tex. 1991). If a pleading defect
cannot be cured by amendment, dismissal may be with prejudice. See, e.g., Joseph E.
Seagram & Sons, Inc. v. McGuire, 814 S.W.2d 385 (Tex. 1991); Texas-Ohio Gas, Inc. v.
Mecom, 28 S.W.3d 129, 146 (Tex. App.‒Texarkana 2000, no pet.). However, a trial court
should not dismiss a plaintiff's claims with prejudice if the pleadings state a valid cause of
action and the pleading defect could be cured by amendment. Mecom, 28 S.W.3d at 146; 
Kutch v. Del Mar Coll., 831 S.W.2d 506, 508 (Tex. App.‒Corpus Christi 1992, no writ);
Atkinson v. Reid, 625 S.W.2d 64, 66 (Tex. App.‒San Antonio 1981, no writ). Under those
circumstances, the proper remedy is to dismiss without prejudice. Kutch, 831 S.W.2d at
508.
          This is one of those situations. Barcroft could have amended his petition to change
the capacity in which he brought suit. Thus, the court erred by dismissing with prejudice.
 

          The judgment is reversed in part and reformed to reflect that the case was
dismissed without prejudice; otherwise, the judgment is affirmed.
 

                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      September 26, 2003
Date Decided:         October 27, 2003