



**MEMORANDUM OPINION**

No. 04-12-00061-CV

Herbert Lawrence **POLINARD**,
Appellant

v.

E.M. **GILMORE**, Jr., Individually and D/B/A Alamo Bail Bonds, and
R.J. Hayes, Individually and D/B/A Alamo Bail Bonds,
Appellees

From the County Court at Law #10, Bexar County, Texas
Trial Court No. 288,485
Honorable David J. Rodriguez, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed:  October 31, 2012

AFFIRMED

After granting sanctions against Herbert Lawrence Polinard, resulting in the striking of Polinard's defensive pleadings, the trial court entered a judgment against him for the amount due on a promissory note signed in connection with a bail bond. The trial court then granted a no-evidence summary judgment in favor of E.M. Gilmore, Jr. and R.J. Hayes as to Polinard's counterclaims against them. Polinard appeals the trial court's judgment and summary judgment order, asserting the trial court abused its discretion by: (1) granting sanctions against Polinard

and his attorney,[1] including death penalty sanctions; and (2) entering *sua sponte* orders that modified the terms of the parties' mediation agreement and provided the basis for the sanctions. Polinard also contends that the trial court erred in granting the no-evidence summary judgment because Polinard produced evidence raising genuine issues of material fact with regard to his counterclaims. We overrule Polinard's contentions and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Gilmore and Hayes d/b/a Alamo Bail Bonds sued Polinard and Eddie Garcia on a promissory note they allegedly signed in order to post a bail bond for Roy Garcia. Eddie failed to answer, and a default judgment was taken against him. Polinard answered and asserted that he did not execute the promissory note. Polinard also asserted numerous counterclaims against Gilmore and Hayes. A detailed recitation of the facts is necessary to address Polinard's appellate issues.

### Mediation Agreement

On November 30, 2005, the parties signed a mediation agreement that did not resolve the case, but did include an agreement to the appointment of a handwriting expert to provide an opinion with regard to Polinard's purported signature on the promissory note. Each party agreed to submit the names of three experts, and if the parties could not agree on an expert from these names, the names would be submitted to the trial court for an appointment. The agreement further stated, "Both sides agree to provide all necessary original documents and handwriting exemplars as requested by the expert. Mr. Polinard will personally provide handwriting

---

[1] We question whether this court has standing to address any issues pertaining to the sanctions imposed against Polinard's attorney since Polinard's attorney did not perfect an appeal on his own behalf. *See Niera v. Frost Nat'l Bank*, No. 04-09-00224-CV, 2010 WL 816191, at *2 (Tex. App.—San Antonio Mar. 10, 2010, pet. denied). Because Polinard raises the same issues with regard to the sanctions against him as he raises with regard to the sanctions assessed against his attorney, we must address the issues regardless. Because we overrule the issues, we need not decide whether Polinard's attorney would have been entitled to relief if the issues had been sustained.

exemplars directly to the expert in person." The expert's fees were to be shared equally by the parties, not to exceed $1,000.00 per side, and were to be paid on or before January 10, 2006. The parties also agreed that the expert's opinion would not be outcome determinative, but either side could call the expert as a witness as if fully disclosed under Rule 194. The parties further agreed to return to mediation to resolve any disputes or disagreements on matters discussed during the mediation. Finally, the parties agreed that the mediation agreement was not subject to revocation, and any party would be entitled to judgment on the agreement.

### Appointment of Handwriting Expert

The parties could not agree on an expert so the trial court entered an order on January 6, 2006, appointing Dale Stobaugh as the handwriting expert. The order stated that the parties would share Stobaugh's cost and expense equally, not to exceed $1,000.00 per side.

Because Polinard failed to timely pay his one-half of Stobaugh's retainer, Gilmore and Hayes filed a motion to compel Polinard to comply with the mediation agreement. On February 10, 2006, the trial court signed an order granting the motion to compel and ordering Polinard to immediately pay Stobaugh the sum of $760.00.

On March 2, 2006, the trial court signed an order granting Gilmore and Hayes's motion for sanctions, again based on Polinard's failure to pay his one-half of Stobaugh's retainer. Polinard was ordered to pay Stobaugh $760.00 by March 9, 2006. Polinard was also ordered to pay Gilmore and Hayes's attorney's fees in the amount of $750.00. Finally, the trial court set a status conference for March 23, 2006.

On March 23, 2006, Polinard's attorney, Hugo Xavier De Los Santos, appeared and argued a motion to set aside the March 2, 2006 order. De Los Santos argued that he did not receive notice of the motion for sanctions or of the March 2, 2006 hearing; however, Gilmore

and Hayes's attorney, Allen Cazier, presented a facsimile confirmation that the motion was sent to De Los Santos's office. De Los Santos also presented a certified letter he sent with payment to Stobaugh that was returned as undeliverable. Although the trial judge mentioned continuing problems with his court coordinator being able to contact De Los Santos, the trial court granted the motion to set aside the March 2, 2006 order. Cazier then addressed the handwriting exemplars that Stobaugh had mentioned would be necessary for him to render an opinion. Cazier agreed to ask Stobaugh to provide a written request of the necessary handwriting exemplars, and a hearing was set for a second status conference.

On March 29, 2006, notice was filed of the correspondence received from Stobaugh. Stobaugh's letter, which was addressed to Cazier, stated that he would need Polinard to submit signatures written as H.L. Polinard, the signature used on the promissory note, and handwriting exemplars from around the time the promissory note was signed.

At the March 31, 2006 status conference, De Los Santos expressed concern about Stobaugh's conversations with Cazier, Stobaugh's failure to return De Los Santos's phone calls, and the broad and vague requests in Stobaugh's letter. Cazier responded that he had a follow-up phone conversation with Stobaugh after receiving the letter, and Stobaugh specifically suggested obtaining ten original signatures from Polinard and cancelled checks for the four months before and four months after the date the promissory note was signed. Although the trial judge attempted to call Stobaugh, his call was not answered. The trial judge then stated that he would confirm what Stobaugh needed to provide his opinion and would sign an order directing that the necessary exemplars be provided by a date certain.

On April 18, 2006, the trial court signed an order directing Polinard to appear before the court by May 1, 2006, and provide 50 signatures. Polinard was also ordered to produce to the

court sequentially numbered checks dated between September 15, 2000 and January 15, 2001 on either a personal or business bank checking account.

On June 2, 2006, the trial court signed an amended order directing Polinard to appear on July 7, 2006, and personally provide Stobaugh all handwriting exemplars requested by Stobaugh. Polinard was also ordered to produce and deliver to Stobaugh sequentially numbered checks dated between September 15, 2000 and January 15, 2001 on either a personal or business bank checking account. Although the record does not expressly indicate the reason the amended order was entered, statements made by De Los Santos at a subsequent hearing indicate the amended order resulted from a discussion that occurred when Polinard appeared before the court to provide the 50 signatures pursuant to the prior order and additional handwriting exemplar requirements were added.[2]

On June 9, 2006, the parties appeared before the trial court on a motion for docket control conference and continuance. De Los Santos noted that the date Polinard was set to appear before Stobaugh was only three days before the trial setting of July 10, 2006. De Los Santos proposed a three month continuance. The trial judge then asked De Los Santos if he intended to oppose presenting Polinard on July 7th for purposes of giving his handwriting exemplars because the docket control order was contingent upon that occurring. De Los Santos responded that Polinard had requested De Los Santos to file a motion to set aside the mediation agreement which was the basis for the court's order. Based on this response, the trial court held the motion for docket control order and continuance in abeyance.

---

[2]     MR. DE LOS SANTOS:  …  I hope the Court understands that the last time there was just a — unfortunately because of the time schedules, we weren't able to come on the date specified, but we were here before the Court and my client was willing — more than willing to comply with the Court's order that existed at the time.

        If the Court remembers, the ballgame was changed on us and instead of complying with the Court's order for just the 50 signatures, they wanted a whole bunch of other things, and the Court graciously allowed —

On July 7, 2006, the parties appeared before the trial court on a request for an emergency setting on "Defendant's Motion to Strike Expert Witness and to Set Aside and Void Mediation Agreement," which was filed by mail and subsequently file-stamped on July 11, 2006. The motion requested that Stobaugh be stricken based on his perceived bias "in favor of the Plaintiff" and that the mediation agreement be set aside because the scope of the examination necessary for Stobaugh to render an opinion was more onerous than Polinard envisioned when he entered into the mediation agreement. The trial court denied the motion for the expedited hearing. The trial court also granted an oral motion to drop the July 10th trial setting.

**Imposition of Sanctions**

On September 19, 2006, the parties appeared before the trial court on Plaintiffs' Second Amended Motion for Sanctions, Defendant's Motion to Strike, and Defendant's motion for docket control order which previously was held in abeyance. Stobaugh and De Los Santos testified regarding the events that transpired when Polinard appeared before Stobaugh to provide the handwriting exemplars. Stobaugh testified that De Los Santos stated that they were finished after Polinard completed only part of one page of a 20 page handwriting exemplars packet, which was a usual and customary tool used to render handwriting opinions. De Los Santos stated that Stobaugh refused to communicate any additional needs after the first page was complete. Stobaugh testified that no checks were produced and delivered. De Los Santos said no checks were available from around the time the promissory note was signed. Stobaugh testified that he requested that a bailiff be present as a third party objective witness. De Los Santos testified that Stobaugh requested the bailiff for protection.

Stobaugh testified that forensic document examiners use a scale of confidence in expressing opinions about forensic handwriting comparisons ranging from: (1) inconclusive; (2)

indications the individual did or did not write the questioned writing; (3) strong probability the individual did or did not write the questioned writing; (4) positive identification; and (5) positive elimination. Based on his examination to date, Stobaugh opined that Polinard did write the questioned signature; however, his opinion was not conclusive, "[t]hus my request for exemplars and standard checks, genuine cancelled checks, written contemporaneously to the date of the promissory note."

Stobaugh testified that rendering an opinion requires an average of a day to work the case "when you have adequate standards, all things done." Stobaugh's fee for a day's work is $1,520.00, or $190 per hour for 8 hours. Stobaugh billed an additional $2,095.00 ($190 for 10 hours plus $195 in expenses) for the day he traveled from Austin to San Antonio to collect the handwriting exemplars from Polinard. Stobaugh billed an additional $2,095.00 for the day he traveled from Austin to San Antonio to testify at the hearing.

At the conclusion of the hearing, the trial court granted the motion for sanctions and struck Polinard's defensive pleadings. The trial court rendered judgment against Polinard on the promissory note and assessed additional sanctions against De Los Santos, including the payment of attorney's fees incurred by Gilmore and Hayes in connection with the motion for sanctions and payment of the $2,095 billed by Stobaugh to testify at the hearing.

**Summary Judgment on Counterclaims**

In October of 2006, Gilmore and Hayes filed a no-evidence motion for summary judgment with regard to Polinard's counterclaims to which Polinard filed a response. The trial court granted the motion, and Polinard appealed. This court dismissed the appeal for lack of jurisdiction, holding the motion failed to address two of Polinard's counterclaims. *See Polinard*

*v. Gilmore*, No. 04-07-00460-CV, 2008 WL 723325 (Tex. App.—San Antonio Mar. 19, 2008, no pet.) (mem. op.).

In May of 2008, Gilmore and Hayes filed a second amended and supplemental no-evidence motion for summary judgment, and Polinard filed a supplemental affidavit. Before a hearing was set on the motion, however, Polinard filed a third amended counterclaim.

In September of 2011, Gilmore and Hayes filed a no-evidence motion for summary judgment challenging each claim raised in Polinard's Third Amended Original Counterclaim. Polinard did not file a response. The trial court granted the motion and severed additional cross-claims and counterclaims against other third parties to make the judgment involving the claims between Gilmore and Hayes and Polinard final.

## LEGAL BASIS FOR SANCTIONS

Polinard contends that the trial court did not have a legal basis to impose the sanctions. Polinard asserts sanctions could not be imposed based on Rule 215 of the Texas Rules of Civil Procedure because the trial court's order was not a discovery sanction. Polinard also asserts that the trial court could impose sanctions pursuant to its inherent power only if the sanctions were authorized by a rule or statute. We disagree.

"The inherent judicial power of a court is not derived from legislative grant or specific constitutional provision, but from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities." *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979). "The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *Id.* "Even in the absence of an applicable rule or statute, courts have the authority to sanction parties for bad faith abuses if it finds that to do so will 'aid in the

exercise of its jurisdiction, in the administration of justice, and the preservation of its independence and integrity.'" *Roberts v. Rose*, 37 S.W.3d 31, 33 (Tex. App.—San Antonio 2000, no pet.) (quoting *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997)); *Kutch v. Del Mar College*, 831 S.W.2d 506, 510 (Tex. App.—Corpus Christi 1992, no writ) ( "Texas courts have the inherent power to sanction for abuse of the judicial process which may not be covered by rule or statute."); *see also In re Killian*, No. 04-01-00598-CV, 2002 WL 873256, at *3 (Tex. App.—San Antonio 2002 May 8, 2002, no pet.) (holding courts possess inherent power to sanction) (not designated for publication).

"The power to compel compliance with valid orders incident to the administration of justice is fundamental, and closely related to the core functions of the judiciary." *Kutch*, 831 S.W.2d at 510. A "[v]iolation of a court order relating to the court's management and administration of a particular legal claim generally will be a significant interference with one or more of the judiciary's functions." *Id*. at 511-12. Accordingly, courts have the inherent power to sanction a party for failing to comply with a court order even in the absence of an authorizing rule or statute. *Id*. at 510; *see also In re K.A.R.*, 171 S.W.3d 705, 715 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (upholding sanction for failure to comply with trial court's order to participate in mediation).

In this case, Polinard was ordered to appear before Stobaugh and provide "all handwriting exemplars as requested by Stobaugh." The trial court's order was consistent with the parties' mediation agreement pursuant to which Polinard agreed to provide "all … handwriting exemplars as requested by the expert" and to "personally provide handwriting exemplars directly to the expert in person." The evidence established that Polinard violated the

trial court's order by failing to provide all handwriting exemplars requested by Stobaugh. Therefore, the court's inherent power provided a legal basis for the imposition of sanctions.

### APPROPRIATENESS OF SANCTIONS

Polinard contends the trial court abused its discretion by imposing a death penalty sanction without a showing of a direct relationship between the alleged offensive conduct and the sanction imposed. Polinard further contends the sanction was excessive, and the trial court failed to consider a lesser sanction. Finally, Polinard contends the sanction was based on a *sua sponte* order entered without due process of law.

We review the trial court's imposition of sanctions under an abuse of discretion standard. *In re Killian*, 2002 WL 873256, at *4. A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Id*. In order to find an abuse of discretion and reverse the sanctions order, we must determine that the trial judge could issue but one ruling — that death penalty sanctions were not warranted. *Id*.

### A. Due Process

A trial court's power to sanction is limited by due process. *Id*. at *3; *Kutch*, 831 S.W.2d at 511. Due process requires notice and a hearing before imposing sanctions. *Kutch*, 831 S.W.2d at 511.

Polinard does not complain that he was not provided notice of the motion for sanctions or a hearing on that motion before the trial court imposed the sanctions, and the record clearly reflects that he was provided both. Instead, Polinard contends that the sanctions are based on his violation of an order that the trial court entered *sua sponte* without notice or a hearing. We disagree.

The order Polinard was found to have violated was based on the parties' mediation agreement. In that agreement, the parties agreed to have a handwriting expert appointed by the court if the parties could not agree on an expert, and Polinard agreed to provide all handwriting exemplars requested by the expert. The trial court's order in furtherance of the parties' mediation agreement was entered after two hearings and, as previously noted in footnote 2, after an apparent discussion involving an amendment to the order. Accordingly, Polinard's due process complaint is overruled.

## B. *Transamerican* Standards

In *Transamerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991), the Texas Supreme Court held "whether the imposition of sanctions is just is measured by two standards." "First, a direct relationship must exist between the offensive conduct and the sanction imposed." *Id*. Thus, "the sanctions the trial court imposes must relate directly to the abuse found." *Id*. "Second, just sanctions must not be excessive." *Id*. A sanction "should be no more severe than necessary to satisfy its legitimate purposes." *Id*. Accordingly, a trial court "must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Id*. Sanctions should not be used to adjudicate the merits of a party's defenses "unless party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *Id*. at 918. "Sanctions which are so severe as to preclude presentation of the merits of [a defense] should not be assessed absent a party's flagrant bad faith or counsel's callous disregard" for the rules. *Id*.

In this case, the sanction imposed precluded Polinard from asserting that he did not sign the promissory note. This sanction was targeted at Polinard's completion of only a portion of one page of a twenty-page handwriting exemplars request, *i.e.*, Polinard's failure to provide

Stobaugh all handwriting exemplars he requested. Accordingly, a direct relationship existed between Polinard's failure to provide the requested handwriting exemplars and his inability to assert a defense on which the handwriting expert was to opine, *i.e.*, whether he signed the promissory note.

With regard to less stringent sanctions, the trial court could take into consideration that a previous court order was issued to force Polinard to comply with his responsibilities with regard to the expert as set forth in the parties' mediation agreement. Moreover, two status conferences were undertaken to work out the details of providing the expert with the necessary handwriting exemplars. Finally, although Polinard's attorney stated an intention to file a motion to set aside the mediation agreement one month before the date Polinard was set to appear before Stobaugh, the motion was not filed until the day before Polinard was to appear, which the trial court could construe as further efforts by Polinard to delay the provision of his handwritten exemplars despite the prior agreement. Based on the foregoing, the trial court could have determined that Polinard's refusal to comply with Stobaugh's requests justified a presumption that his defense regarding his signature lacked merit. The trial court could further have determined that Polinard's refusal to comply with Stobaugh's requests demonstrated flagrant bad faith and callous disregard for the trial court's order. Accordingly, the trial court did not abuse its discretion in imposing death penalty sanctions.

## TERMS OF MEDIATION AGREEMENT

In his second issue, Polinard asserts the trial court abused its discretion in entering an order contrary to the terms of the parties' mediation agreement. *See Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976) ("A final judgment which is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that

agreement."). The order entered by the trial court, however, did not modify the terms of the parties' agreement. The parties agreed to the appointment of an expert, and Polinard agreed to provide all necessary documents and handwriting exemplars requested by the expert. Rather than modifying the terms of the mediation agreement, the trial court's order facilitated compliance with the agreement. The mediation agreement contemplated an order by the trial court appointing an expert, and the trial court's order was in accordance with the agreement.

Polinard also contends the agreement required the parties to return to the mediator to resolve future disputes. The mediation agreement required the parties to return to mediation to resolve "any disputes or disagreements between these parties on the matters included in this session." The matters included in the session involved the appointment of a handwriting expert. The parties did not dispute that they agreed to such an appointment. In fact, Polinard does not dispute the contents of the mediation agreement; he simply no longer wishes to comply with its terms. The agreement expressly provided, however, that it could not be revoked and judgment could be entered based on the agreement. Accordingly, because the parties were not in dispute regarding their agreement to appoint a handwriting expert, no dispute arose that required them to return to mediation.

Polinard also contends the trial court abused its discretion because the fees assessed by Stobaugh exceeded the fees as stated in the agreement. The trial court's orders, however, contained no provision contrary to the fee-splitting provision in the mediation agreement. The only order entered by the trial court addressing the fees states that they would be shared and would not exceed $1,000.00 per side. Moreover, the fees were not the basis for the trial court's sanctions. The sanctions were based on Polinard failing to provide the handwriting exemplars requested by Stobaugh. Accordingly, the trial court's order did not modify the fee-splitting

provision contained in the mediation agreement, and the amount of fees had no bearing on the trial court's sanctions order.

Finally, Polinard asserts the order was vague. Both the order and the mediation agreement, however, clearly stated that Polinard would provide all handwriting exemplars requested by the expert. Although Polinard may have been unaware of the number of exemplars the expert would request, this does not render the language used in either the mediation agreement or the order vague.

## NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

Polinard concedes in his brief that he failed to file a response to the no-evidence motion for summary judgment granted by the trial court. Polinard asserts, however, that evidence was on file in response to prior motions that the trial court could consider.

"Absent a timely response, a trial court must grant a no-evidence motion for summary judgment that meets the requirements of Rule 166a(i)." *Imkie v. Methodist Hosp.*, 326 S.W.3d 339, 343 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Stated differently, "[f]ailure to respond to a no-evidence motion is fatal." *Michael v. Dyke*, 41 S.W.3d 746, 751 (Tex. App.—Corpus Christi 2001, no pet.). Because Polinard failed to file a response to the no-evidence motion for summary judgment that was granted by the trial court, the trial court did not err in granting the motion.

## CONCLUSION

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice