

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00051-CV

_____

JERRY LAZA, Appellant

V.

CITY OF PALESTINE, TEXAS, Appellee

_____

On Appeal from the 349th District Court
Anderson County, Texas
Trial Court No. DCCV16-356-349

_____

Before Morriss, C.J., Stevens and van Cleef, JJ.

# REVISED ORDER

Pending before this Court is the decision on the possibility of sanctioning Jerry Laza's attorney, Nicholas D. Mosser, for statements by Mosser while representing Laza before this Court, statements that we have concluded transgress his obligation as an attorney to conduct himself in a professional and ethical manner. While this Court does not take the matter of sanctions lightly, we cannot ignore the many disrespectful statements Mosser has made to this Court—about this Court, the trial court, and the administrative judge—that are without any basis in fact. Having considered all relevant pleadings, the Court finds that sanctions are appropriate and necessary.

## I. Background

In 2016, the City of Palestine sued Laza, alleging that Laza violated various city ordinances by improperly maintaining certain of his properties within the city and by unlawfully keeping junk, vehicles, equipment, and other unsightly items on those properties. The case proceeded to trial, and the trial court entered judgment in favor of the city in February 2018. On appeal, Laza was represented by Nicholas D. Mosser.

The clerk's and reporter's records were filed in November 2020. In a second motion for extension of time in which to file his brief, Laza complained about an omission from the reporter's record. On February 2, 2021, after Laza filed two additional motions for extensions of time in which to file his brief, this Court abated this appeal to the trial court pursuant to Rule 34.6 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 34.6(e), (f). Our order

instructed the trial court to take evidence on, and enter findings with respect to, each exhibit or portion of the record that was determined to be lost or destroyed.

Pursuant to our order, the trial court held two evidentiary hearings, the first of which was conducted on July 13, 2021.[1] After the first hearing, Mosser filed an emergency motion on August 26, 2021, seeking the trial court's recusal. The motion claimed, among other things, that the trial judge "interjected himself into the facts of this case by personally conducting ex-parte investigations, calling himself as witness, testifying about his recollection of events, [and] interrogating witnesses based on his ex-parte investigations." The trial court declined to recuse and signed an order referring the motion to recuse to the presiding judge of the Tenth Administrative Judicial Region. On September 27, 2021, the presiding judge of the Tenth Administrative Judicial Region issued an order denying the emergency motion to recuse, finding that "the movant did not file the motion as soon as practicable after the movant knew the grounds stated in the motion." *Laza v. City of Palestine*, No. 06-18-00051-CV, 2022 WL 3449819, at *17 (Tex. App.—Texarkana Aug. 18, 2022, no pet. h.) (mem. op.).

The trial court held a second evidentiary hearing in connection with the accuracy of the record and, thereafter, submitted its findings regarding the appellate record in a report dated December 14, 2021. By separate order dated December 28, 2021, this Court adopted each of the trial court's findings and its conclusion that there was no error or omission in the appellate record

---

[1]On January 17, 2017, the presiding judge of the First Administrative Judicial Region of Texas assigned the Honorable Dwight Phifer, senior judge of the 2nd Judicial District Court, to the 349th Judicial District Court of Anderson County, Texas, to hear cause number DCCV 16-356-349, *City of Palestine v. Jerry Laza*. On July 13, 2021, the presiding judge of the Tenth Administrative Judicial Region assigned Judge Phifer to the Anderson County district court to the same cause number, this time on abatement by the order of this Court. The trial court did not sign any contested order prior to the second order of assignment.

that was significant or that would affect the resolution of the appeal. The appellate record was completed and filed in this Court.

Despite our December 28 order adopting the trial court's findings and conclusions, Mosser filed a motion to abate the appeal to the trial court on January 14, 2022, complaining about the record and stating, "This Court accepts false statements of fact as conclusive, such as the trial court's 'finding' that certain exhibits were in the record, except had anyone actually looked, it would be clear they were not." We denied the motion to abate. After the Court denied the motion, Mosser attempted to file "Appellant's EMERGENCY Supplemental Motion to Abate" (Emergency Motion). Mosser designated that document as an "Other Document," rather than a motion, in the statewide e-filing system. Because there was no motion pending before this Court when Mosser attempted to file the Emergency Motion, our clerk's office deemed the document a motion, *see* TEX. R. APP. P. 10.1(a), which requires the payment of a $10.00 filing fee, *see* TEX. R. APP. P. app. A, § B(3)(a). Accordingly, the clerk's office attempted to file the document as a motion, and the statewide e-filing system attempted, unsuccessfully, to process the payment. As a result, the filing was rejected.

## A.    Mosser's Conduct Leads to An Order of Admonishment

After our clerk's office explained the reason for the rejected filing to Mosser, Mosser responded in an unprofessional and disrespectful manner towards our clerk and deputy clerks through a series of telephone calls, emails, and letters. As a result of those actions, among others, this Court issued an order admonishing Mosser to cease engaging in that conduct. In our

4

order, we outlined a few examples of Mosser's "disrespectful behavior towards our clerk and court staff in this case," including the following:

- On December 6, 2021, Mosser made accusations regarding this Court's responsibility for the May 2020 ransomware attack that affected not only this Court, but all appellate courts, the Texas Court of Criminal Appeals, and the Texas Supreme Court. He inappropriately suggested that someone from this office caused the statewide ransomware attack by watching "porn" on a state computer. Mosser also used profanity while speaking with the clerk during this telephone conversation.

- In a different conversation on December 6, 2021, Mosser called this Court's clerk's office and asked to speak with the Court's chief staff attorney. Mosser was advised by the clerk that, in accordance with Rule 9.6 of the Texas Rules of Appellate Procedure, all communications about a case must be made only through the clerk. *See* TEX. R. APP. P. 9.6. When Mosser disputed that statement, the clerk read him the text of Rule 9.6. Nevertheless, Mosser emailed this Court's chief staff attorney directly on December 6.

*Laza v. City of Palestine*, No. 06-18-00051-CV, 2022 WL 258495, at \*3 (Tex. App.—Texarkana Jan. 26, 2022, order).

We further recited that "Mosser penned a letter to the clerk in which he accused members of our clerk's office of inappropriate behavior and accused this Court of engaging in subterfuge by entering secret orders." *Id.* at \*2. Our order continued,

In addition to his disrespectful, unprofessional, and inappropriate manner of communicating with our clerk's office, Mosser has, in several filings with this Court, impugned the integrity of this Court; and, just as in *Jabary* [*v. McCollough*, 325 F.D.R. 175 (E.D. Tex. 2018, order)], his attacks are not supported by facts or evidence. By way of example, in his Motion to Abate, Mosser states, "[T]his Court has improperly sealed matters concerning *ex parte* communications with witnesses in the Trial Court as to instructions on the exhibits in this case. *See* TEX. R. CIV. P. 76a." Later in the same motion, Mosser states that "this Court has improperly sealed matters without compliance with Rule 76 or 76a." Mosser's assertions that this Court has sealed any records in this

5

appeal [are] patently false, and the inferences of impropriety enveloped in his accusations are baseless and unsupported by facts or evidence.

*Id*. at *3 (second alteration in original). As a result of that conduct and other conduct outlined in our order, this Court admonished Mosser as follows:

> 1.     The clerk's office of this Court is the mouthpiece of this Court, and Mosser is admonished to treat it as such. Mosser is admonished not to use profanity in his verbal communications with the clerk of this Court or the deputy clerks of this Court and is admonished not to address the clerk of this Court, or the deputy clerks of this court, in a disrespectful, rude, or hostile manner.
>
> 2.     Mosser is admonished not to engage in further violations of Rule 9.6 of the Texas Rules of Appellate Procedure.
>
> 3.     Statements made to this Court, both in filings with this Court and through representations made to this Court's clerk's office, must be based in fact, must have evidentiary support, and must be made without reckless disregard as to their truth or falsity. Mosser is admonished that unfounded, baseless attacks on the integrity of this Court or its staff will not be tolerated.
>
> Mosser is admonished to heed these warnings and not to engage in similar conduct. He is further admonished that this Court continues to have the authority to take further action, not only as to any future conduct, but also as to the conduct described herein.

*Id*. at *4. Mosser did not heed our warning set forth in paragraph three of our admonishment order.

## B.     Despite Admonishment, Mosser Continued to Engage in Sanctionable Conduct

Following the issuance of our admonishment order, Mosser made sanctionable statements in his briefing filed with this Court. Among many inappropriate statements, Mosser made six statements that we find particularly sanctionable. Five statements, further discussed below, accused the administrative judge and Judge Phifer of committing "atrocities" and accused Judge

6

Phifer of "masquerading as a judge," becoming "personally invested in the creation of a record," "conducting ex parte investigation," changing witness testimony, suborning perjury, attempting to influence the administrative judge, and "manipulating trial exhibits." In a sixth statement, Mosser accused this Court of unnecessarily expending judicial resources and making "spurious ad hominin [sic] attacks on" him.[2]

## II.     Notice and Show Cause Order

As a result of these sanctionable statements, on September 16, 2022, we issued a notice and order to show cause to Mosser, commanding Mosser to show cause why he should not be sanctioned by this Court for such statements. In our notice and order, we commanded Mosser to appear on "Monday, October 31, 2022, at 11:00 a.m. at the Court of Appeals, Sixth Appellate District, State of Texas, Bi-State Justice Building, 100 N. State Line Ave., Texarkana, Texas 75501 to show cause why he should not be sanctioned by this Court for the statements specified in the Order of September 16, 2022." Our order admonished Mosser that "[f]ailure to attend the hearing [would] result in the imposition of just sanctions." Even though Mosser had actual notice of the show cause hearing, he chose not to personally appear.

## III.     Service and Actual Notice

The notice and order to show cause were delivered to the Collin County Sheriff on September 19, 2022, and were returned unserved by Collin County Deputy Sheriff Bryan Borton

---

[2]Mosser also made the following unprofessional statements, which are not addressed in this order: (1) "Justice Morriss failed to appreciate the law of Texas on where to file, how to file, and what to file that creates a case in the Court of Appeals," (2) Justice Morriss's "desire to retain the case without jurisdiction has blinded him to" the law, (3) Justice Morriss made "erroneous comments and [an] impassioned plea to retain a case that he has no jurisdiction over," (4) "Anderson County tends to lose files, which suddenly re-appear sporadically during the process of trying to get a complete record on appeal," (5) the District Clerk and Court of Appeals Clerk do not "know what a Docket Sheet is," and (6) this Court's opinion distinguishing the cases cited by Mosser was "absurd."

7

on September 29, 2022. On behalf of the Court, a private process server then attempted to personally serve the notice and order on Mosser on September 30, October 4, October 6, October 7, October 8, and October 10. In an affidavit filed with this Court, the process server, Roger Bigony, PSC#5307 of Malone Process Service, LLC, stated that Mosser called him at approximately 4:00 p.m. on October 6 and asked if the service documents were stamped by a judge. According to Bigony, Mosser called from a 214-area code. Bigony was ultimately unsuccessful in his efforts to personally serve Mosser with the notice and order to show cause.

On October 6, 2022, the clerk of this Court emailed Mosser this Court's order and notice to show cause.

On October 21, Mosser filed a motion in this Court captioned Verified Motion to Recuse, Disqualify, and Transfer, asking that each of the three justices of this Court recuse or disqualify themselves from presiding over the show cause hearing scheduled for Monday, October 31. Mosser sought recusal or disqualification because he claimed that the justices of this Court made false allegations against him and could not "be entrusted with presiding over this matter with impartiality." Mosser attached to his motion a copy of the clerk's October 6 email and letter notifying him to show cause.[3] He further claimed that he gained knowledge of the order to show cause when a Law360 reporter requested comment.

---

[3]Pursuant to the procedure set forth in Rule 16.3(b), the justices considered the motion in chambers and found no reason to recuse or disqualify themselves and certified the matter to the remaining members of the Court, en banc. *See* TEX. R. APP. P. 16.3(b); *Manges v. Guerra*, 673 S.W.2d 180, 185 (Tex. 1984); *McCullough v. Kitzman*, 50 S.W.3d 87, 88 (Tex. App.—Waco 2001, pet. denied) (per curiam) (order). The motion was denied as to each justice in separate orders. The transfer issue was submitted to the Texas Supreme Court. The Texas Supreme Court issued its order on October 27, 2022, denying the request to transfer this matter from this Court.

On October 28, Mosser filed his response to this Court's show cause order, claiming that his statements did not constitute a threat to the administration of justice, his speech was protected by the First Amendment to the United States Constitution, his statements were factual, there was no seal affixed to the order, the show cause order was insufficiently specific and thus violated due process, the Court failed to personally serve Mosser, this Court lacked jurisdiction, and the justices on this Court improperly failed to recuse or disqualify. Mosser then attempted to explain the alleged factual basis of each specific statement set forth in the show cause order.

It is apparent that Mosser had actual notice of the show cause hearing on October 31 based on (1) his telephone conversation with the process server, (2) this Court's e-service of the notice and order to show cause on October 6, (3) the request for comment from a Law360 reporter, (4) the filing of the motion to recuse, disqualify, and transfer, and (5) the filing of a response to the show cause order.

> Rule 15.2 of the Texas Rules of Appellate Procedure states:
>
> A party who appears in person or by attorney in an appellate court proceeding--or who has actual knowledge of the court's opinion, judgment, or order related to a writ or process--is bound by the opinion, judgment, or order to the same extent as if personally served under 15.1.

TEX. R. APP. P. 15.2. In addition to having actual knowledge of this Court's show cause order, Mosser appeared in this proceeding by virtue of his October 21 and October 28 filings in this Court. *See* TEX. R. APP. P. 6.2. As a result, and in accordance with Rule 15.2, Mosser was bound by this Court's show cause order to the same extent as if he had been personally served under Rule 15.1.

9

## IV.     Show Cause Hearing

In Mosser's place, James C. Mosser appeared at the October 31 show cause hearing. James C. Mosser represented to the Court that Mosser had actual knowledge of the hearing. He further claimed that Mosser did not attend the hearing because he lived in Michigan. In our order, this Court warned Mosser that "[f]ailure to attend the hearing [would] result in the imposition of just sanctions." At the hearing, this Court advised James C. Mosser that Mosser failed to attend the hearing at his peril.

## V.     Authority and Due Process Requirements

As stated in our admonishment order,

> "It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed within a Court, because they are necessary to the exercise of all others.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 U.S. 32, 34 (1812)). "For this reason, '[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" *Id.* (quoting *Anderson v. Dunn*, 19 U.S. 204, 227 (1821)). "Texas courts, like all civilized courts of justice, have these inherent powers." *Kutch v. Del Mar College*, 831 S.W.2d 506, 509 (Tex. App.—Corpus Christi 1992, no pet.).

*Laza*, 2022 WL 258495, at *4 (alterations in original). This means that, "[w]hen an attorney engages in misconduct before our court . . . we retain the inherent power to discipline such behavior when reasonably necessary to the extent deemed appropriate." *Johnson v. Johnson*, 948 S.W.2d 835, 840 (Tex. App.—San Antonio 1997, writ denied) (citing *Campos v. Inv. Mgmt. Props., Inc.*, 917 S.W.2d 351, 358 (Tex. App.—San Antonio 1996, writ denied) (Green, J., concurring) (citing *Pub. Util. Comm'n of Tex. v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988); *Kutch*

*v. Del Mar Coll.*, 831 S.W.2d 506, 509 (Tex. App.—Corpus Christi 1992, no writ)).  As stated by the Texas Supreme Court, "Courts possess inherent power to discipline an attorney's behavior."  *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 732 (Tex. 1997) (reh'g, order); *see Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 707 (Tex. 2020).

Although we may assess sanctions based on our inherent authority, we are required to provide notice to the affected party that we intend to do so to allow the party to prepare a defense.  *Greene v. Young*, 174 S.W.3d 291, 300 n.4 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Kutch*, 831 S.W.2d at 511) ("The traditional Due Process protections of notice and hearing are also necessary before imposition of sanctions.").  We conclude that Mosser received those due process protections as he was afforded notice of the hearing, had actual knowledge of this Court's order and of the hearing date, and was provided the opportunity to attend the hearing to make his defense.  Our order provided the basis for the proposed sanctions based on this Court's inherent power and described the sanctionable conduct by directly quoting the statements the Court found sanctionable.  And, although our order set a deadline of Monday, October 24, 2022, in which to file a response to the order, we nevertheless filed Mosser's response submitted to this Court on Friday, October 28, 2022, at 5:54 p.m.  We have likewise considered the merits of Mosser's response.

In addition, sanctions must be just.  This means that a sanction "must be directed against the abuse and toward remedying the prejudice caused the innocent party.  It also means that the sanction should be visited on the offender."  *Transamerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).  Sanctions must also not be excessive, that is, "[t]he punishment

11

should fit the crime." *Id.* A court must therefore "consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *Id.*

This is not the first time that Mosser has engaged in less than exemplary conduct before a court. As we noted in our admonishment order,

> Specifically, four years ago, Mosser was sanctioned by Judge Amos Mazzant, Presiding Judge of the United States Federal Court for the Eastern District of Texas, Sherman Division. *See Jabary . . . .*

*Laza*, 2022 WL 258495, at *2. In *Jabary*, the court listed every sanctionable statement in its order and explained why each statement was devoid of factual support. After having analyzed each such statement, the court observed,

> Mosser makes such bold, disrespectful, and inappropriate comments with a complete and absolute lack of factual or evidentiary support. Mosser repeatedly attempts to impose his view of how this case has proceeded, his perception of why the Court ruled the way it did, and his own personal frustrations as evidence of how the Court allegedly acted inappropriately. Mosser's actions demonstrate the utmost disrespect.

*Jabary*, 325 F.R.D. at 199 (footnote omitted). The court further observed that, although Mosser's "statements were disrespectful and unsupported in fact, Mosser did not apologize for making the statements or even admit they were disrespectful." *Id.* at 200 (footnote omitted). The court imposed "a monetary sanction of $250 for each of the twelve [sanctionable] statements" at issue, reasoning that such amount was "appropriate to deter such conduct." *Id.* In addition, the court ordered Mosser to attend two Texas Bar Continuing Legal Education classes on ethical courtroom behavior, as it believed that would "assist in educating Mosser on appropriate courtroom demeanor" and that the classes would "serve Mosser well going forward in the profession." *Id.*

12

## VI.    Sanctionable Conduct

We consider the Texas Rules of Professional Conduct in our evaluation of Mosser's statements.  Among other things, these rules state that "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal."  TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 3.03(a)(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A.   In addition, "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory official or public legal officer . . . ."   TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 8.02(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A.  Finally, "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials."  TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. preamble ¶ 4, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A.  We address all six of Mosser's sanctionable statements separately.

> **1.    "Setting [sic] the *atrocities that were committed by the Administrative Judge and the 'Trial Judge*,' one of them should have determined that Judge Phifer became personally invested in the creation of a record, the investigation into the lost records, the manipulation of trial exhibits, and through the information he gained while not presiding over the case should have recused him from sitting after *he conducted this ex parte investigation*."**  (Emphasis added).

This claim appears on pages 64 through 65 of the brief Mosser filed on behalf of Laza.

In this statement, Mosser claims that the administrative judge and the trial judge committed atrocities and that the trial judge conducted an ex parte investigation, among other things.  By accusing the administrative judge and the trial judge of committing atrocities, Mosser is claiming that they committed "a shockingly bad or atrocious act."  *Atrocities*, Merriam-

13

Webster.com, https://www.merriam-webster.com/dictionary/atrocities (last visited Nov. 9, 2022). An "atrocious" act is one that is "extremely wicked, brutal, or cruel." *Atrocious*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/atrocious (last visited Nov. 9, 2022).

In his response to our order to show cause, Mosser claims that this statement is merely a "simple summation about conduct of Judge Phifer and [and the administrative judge] in isolation, disregarding the some 15 pages of discussion and citations and claims that Mosser cannot say this, again for some reason." He further states, "If these statements are viewed as a violation of those justice's integrity, there is no rule against such briefing. However, if the Court believes that these statements are without support, then it need only look to the record and the 15 pages of briefing discussion [sic] those actions and their conduct."

The statement quoted above appeared in Laza's brief on appeal under the heading "Whether the Trial Court exceeded its authority by failing to recuse himself and by failing to follow the mandates of this Court's Order." In that section of his brief, Laza complained that this case was abated on February 2, 2021, and that Judge Phifer was not assigned to the case by the administrative judge until July 13, 2021. He further complained that the trial court investigated "matters for months and had become a material witness to his own investigation." He claimed this was so because Judge Phifer apparently familiarized himself with the state of the record before he conducted the first of two evidentiary hearings on July 13, 2021. The brief claimed that Judge Phifer offered exhibits, led witnesses through the admission of those exhibits,

14

and suborned perjury—an allegation that will be addressed below—and therefore should have recused.

Context is important to an understanding of the issues with the record in this matter. The notice of appeal was filed in June 2018. The clerk's record was filed in August 2018, and the reporter's record was filed in September 2018. After the reporter's record was filed, Laza filed a suggestion of bankruptcy, and the case was administratively abated. In May 2020, all appellate courts in the State of Texas, including this Court, the Texas Court of Criminal Appeals, and the Texas Supreme Court, were subjected to a ransomware attack that had the effect, among other things, of deleting the clerk's and reporter's records in this matter from our case management system. When the case was re-instated, the clerk and the court reporter were required to re-file their records. There were discrepancies in the record that required abatement to the trial court to resolve. Complicating the entire matter was the fact that three court reporters recorded the trial.

The record indicates that, on July 13, 2021, the regional presiding judge signed the order appointing Judge Phifer as the judge to preside over the abatement proceeding, presumably because Judge Phifer was appointed to preside over the trial. The record reflects that Judge Phifer conducted no hearings before the July 13, 2021, order.

The trial court undertook the task of ensuring that a complete and accurate record was filed in this appeal. The trial court conducted a lengthy evidentiary hearing on July 13, 2021. That hearing was recessed to afford Laza additional time to identify any alleged defects in the record. The day before the hearing was scheduled to commence again in August 2021, Laza filed a motion to recuse Judge Phifer based solely on what Judge Phifer said on the record at the

15

prior July hearing regarding his efforts to address Laza's complaints as to the record. After that motion was denied by the administrative judge, the trial court conducted a second lengthy hearing on November 30, 2021. The trial court made findings and conclusions regarding the record, which we adopted.

As for Laza's assertion that the trial judge and the administrative judge committed atrocities, meaning they committed acts that were "shockingly bad" or "extremely wicked, brutal, or cruel," neither Mosser's explanations nor the record itself provide factual support for this statement. Accordingly, we conclude that this statement has no factual support and is a violation of Rule 8.02(a) of the Texas Disciplinary Rules of Professional Conduct, *see* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 8.02(a) *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A., and of admonishment number 3 of our admonishment order.

As for Laza's assertion that the trial judge conducted an ex parte investigation or otherwise created the record or manipulated exhibits, we find such assertions devoid of any factual basis and, thus, violative of Rule 8.02(a) of the Texas Disciplinary Rules of Professional Conduct, *see* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 8.02(a) *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A., and of admonishment number 3 of our admonishment order. As we explained in our opinion:

> The fact that the trial judge had personal knowledge of what occurred at trial and therefore had unique knowledge of the record is not a basis for recusal under the Rule. The trial judge explained, on the record, that he had viewed the voluminous trial record to prepare for the abatement hearing and to enable the hearing to proceed efficiently. The trial court acted appropriately in speaking with court personnel about the record to prepare for the hearing. Canon 3.B.(8)(d) of the Code of Judicial Conduct specifically recognizes that a judge's communication with court personnel does not constitute an impermissible ex parte

16

communication. TEX. CODE JUD. CONDUCT, Canon 3.B.(8)(d), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. C. The trial court's groundwork in preparing for the abatement hearing was conducted for the purpose of clarifying the issues and expediting the hearing. The trial court was, after all, tasked with determining the accuracy of the record. Allegations that his efforts in doing so formed the basis of a valid recusal motion are meritless.

*Laza*, 2022 WL 3449819, at \*16 n.17. Mosser's claims that Judge Phifer and the administrative judge acted inappropriately in any fashion lack any factual basis and are therefore sanctionable.

**2.** **"*Judge Phifer suborned perjury by soliciting the testimony of Ms. Vick* who testified under oath that the Court of Appeals, on March 10, 2021, instructed her to change volumes or indexes, and then told Ms. Vick that the 'court of appeals said they would pull everything and refile."**

This claim appears on page 67 of the brief Mosser filed on behalf of Laza.

In this statement, Mosser claims that Judge Phifer suborned perjury by soliciting Vick's[4] testimony. "Perjury" means "the voluntary violation of an oath or vow either by swearing to what is untrue or by omission to do what has been promised under oath : false swearing." *Perjury*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/perjury (last visited Nov. 9, 2022). "Suborned" means "to induce to commit perjury." *Suborned*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/suborned (last visited Nov. 9, 2022). Mosser must therefore establish a factual basis for the propositions (1) that Vick lied under oath and (2) that the trial court induced her to do so.

In his response to our order to show cause, Mosser claims that this Court has disregarded the evidentiary support for this "factual statement." Mosser then cites a specific portion of the record in which Vick testified, "I've got a letter from the court of appeals, March the 10th

---

[4]Vick is Susan Waldrip Vick and is identified in the record at times as Ms. Waldrip. Vick was one of the three court reporters who transcribed the trial proceedings in this matter.

17

2021,[5] where it was filed and then they came back and wanted the index changed, so Volumes 2, 3 and 4, and the court of appeals said they would pull everything and refile." Mosser stated that he "specifically asked the clerk's office to provide these communications to him," citing a December 7, 2021, letter to our clerk. In that letter, Mosser expressed concern about communications between this Court and unknown persons. Mosser stated that he "called the clerk[']s office to determine the veracity of a statement made by the Court Reporter, that she had been told by [the clerk's] office that the exhibits filed with the Court of Appeals were sufficient." Mosser's letter continues, "Your clerks informed me, unequivocally, that there had been no written communications from the Court of Appeals to anyone regarding this case. However, a simple review of the docket sheet, a term that seems to continually elude everyone in this case, demonstrates that your clerks were not entirely honest."

The written communications referenced by Mosser as reflected in the docket sheet were emails between the clerk's office and the district court coordinator and the district clerk regarding the scheduling of the evidentiary hearings in the trial court. Those emails were provided to Mosser by this Court. Mosser's response stated that he asked our clerk, "So you have no recordings or any other communications that are not publicly available online? Such as: (testimony of Vick above as quoted above)." Our clerk's office responded, "We do not have anything else." From this exchange, Mosser posits that Vick must have been lying when she

---

[5]By letter dated March 10, 2021, our clerk's office notified the parties that the certified reporter's record (volumes 2, 3, and 4) was electronically received and filed. Susan Waldrip, court reporter, was copied on the letter, as was the trial court.

18

testified (as quoted above). Mosser did not attempt to explain a factual basis for his assertion that Judge Phifer suborned perjury.

The record of the July 13, 2021, hearing indicates that Mosser filed, on behalf of Laza, a document captioned Notice of Errors and Motion to Correct Court Reporter's Record. At the hearing, the first issue the court addressed based on that document "was a statement of facts in the court of appeals that did not relate to this case, clearly did not relate." Vick explained:

> The portion that they're alleging that was attached to the court's record was heard in 2020. The original court record was filed in September in 2018 and it could not have been included since it was a CPS case that was heard in 2020. It would not have been attached to the original court record or statement of facts that was filed in 2018, September 2018. The original court record that was filed in 2018 was filed and approved from the court of appeals. I have letters stating that.
>
> And then as far as that, the court of appeals got hacked and so I don't know. What happened was the court records in the court of appeals, everything got mixed up.
>
> . . . .
>
> . . . . So they wanted us to refile it again and then once these issues -- I was aware these issues were brought up they pulled the record. So . . . as far as the whole statement of facts to be filed we were supposed to refile everything again, because I've been talking back and forth to the court of appeals.

The trial court summarized, "And I will state it clearly is not -- that part of the record clearly was not related to this case and I assume both parties, even if it were still there, would stipulate to the court of appeals that it has nothing to do with this appeal and it would not affect it." Counsel for the city agreed. James C. Mosser questioned Vick about the certification of the original record filed in September 2018. The trial court then asked Vick whether the irrelevant portion of the record was included in subsequent filings, and she responded that it had not been included.

19

When James C. Mosser asked the court to clarify, the court stated that it was "speaking strictly about on page two of your Motion to Correct Court Reporter's Records. You have a section called Inapplicable Sections and you claim that there's at least three volumes that relate to matters other than Mr. Laza's case."

Our records further reflect that the volumes filed on March 10, 2021, are related to this case and that our clerk removed the misfiled volumes. This issue was discussed at the hearing at length. It is apparent from the record that the court reporter contacted this Court's clerk's office regarding the misfiled volumes, those volumes were taken down, and the correct volumes were filed in their stead.

Nothing in Mosser's explanation provides a factual basis for the assertions (1) that Vick perjured herself or (2) that Judge Phifer suborned perjury. This statement is particularly egregious not only because it lacks any factual basis, but because it accuses both Vick and Judge Phifer of criminal conduct. This statement violates Rule 8.02(a) of the Texas Disciplinary Rules of Professional Conduct, *see* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 8.02(a) *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A, and admonishment number 3 of our admonishment order and is therefore sanctionable.

> **3.** **"Judge Phifer requested to stay on the case and *attempted to influence the Administrative Judge by indicating his wishes on remaining on the case*. All of this was off the record, in *ex parte* correspondence with the Administrative Judge."** (Emphasis added).

This claim appears on page 68 of the brief Mosser filed on behalf of Laza.

In response to our show cause order, Mosser states that this statement was factually supported by the record and that the entirety of the statement in his brief was:

20

> Despite this, the Judge Phifer requested to stay on the case and attempted to influence the Administrative Judge by indicating his wishes on remaining on the case. Appx. 6. All of this was off the record, in *ex parte* correspondence with the Administrative Judge." Appx. 6 ("Judge Phifer does not wish to recuse in this matter and has instructed me to forward this motion to you for ruling.").

Mosser points out that he cited Rule 18a(c)(2) of the Texas Rules of Civil Procedure and caselaw in support of this statement, which stands for the proposition that the "rules plainly discourage any attempt by the challenged judge to influence the judgment of the assigned judge." Rule 18a(c)(2) states, "The judge whose recusal or disqualification is sought should not file a response to the motion." TEX. R. CIV. P. 18a(c)(2). The record does not include any response to the motion by Judge Phifer.

The statement quoted above relates to Laza's motion to recuse Judge Phifer on August 26, 2021. In his response and in his brief, Mosser referred to Appendix 6 of the appellant's brief, which consists of an email from Cindy Singletary, the district court coordinator for Anderson County, to Judge Alfonso Charles. This email apparently is the "off the record" "ex parte correspondence with the Administrative Judge" to which Mosser refers in the statement quoted above. The email reads:

> Good morning Judge Charles,
>
> We were set this morning for an evidentiary hearing in this matter when unbeknownst to us, this last-minute Emergency Motion to Recuse was filed. The clerk did not have it pulled out of the efile system until this morning.
>
> We have called off today's hearing. Judge Phifer does not wish to recuse in this matter and has instructed me to forward this motion to you for ruling. Due to the size of the exhibit- it had to be broken up into several documents, my apologies.

21

Thank you,

Cindy Singletary,
District Court Coordinator

Rule 18a(f) states:

> (1)    Responding to the Motion.  Regardless of whether the motion complies with this rule, the respondent judge, within three business days after the motion is filed, must either:
>
> > (A)    sign and file with the clerk an order of recusal or disqualification; or
> >
> > (B)    sign and file with the clerk an order referring the motion to the regional presiding judge.

TEX. R. CIV. P. 18a(f).  The record reflects that Judge Phifer signed and filed an order of referral on the motion to recuse to Judge Charles on August 27, 2021.  The order stated, "I respectfully decline to recuse myself and request the Presiding Judge of the Tenth Administrative Judicial Region to assign a judge to hear the motion to recuse."  This order was properly signed and filed in accordance with, and as required by, Rule 18a(f).

The email from the docket coordinator to Judge Charles stating that Judge Phifer did not wish to recuse provided no factual basis for the assertion that Judge Phifer attempted to influence the Administrative Judge by indicating his wishes to remain on the case.  It merely echoed the information in the order filed by Judge Phifer, as was required by Rule 18a(f).

We conclude that, because Mosser has failed to provide factual support for this statement, Mosser's statement violates Rule 8.02(a) of the Texas Disciplinary Rules of Professional Conduct, *see* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 8.02(a) *reprinted in* TEX. GOV'T

22

CODE ANN., tit. 2, subtit. G, app. A, and admonishment number 3 of our admonishment order and is therefore sanctionable.

**4.	"The 'Trial Judge change[d] testimony of witnesses.'"**

This claim appears on page 75 of Laza's brief and alleges a violation of Section 37.09, subsections (a) and (d), of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 37.09(a), (d) (Supp.) (classified as third-degree felony offenses of tampering with or fabricating physical evidence).

In his response to our show cause order, Mosser claims that this statement stems from advocacy based on the record. Mosser points out that, had we not omitted the balance of the quotation, the statement would have read:

The trial court issued its findings in a report to this Court on December 14, 2021. Paragraph five of the findings reads:

> 5.	CLAIM: "Vol. 2-Ex 11 & 12-Right of Way?
>
> FINDINGS AND RESOLUTION:	As he stated at the hearing, Appellant's objection is that he cannot identify the Right of Way marker in the photograph. Exhibit 11 is a photograph of lawnmowers with high weeds on Appellant's property (as identified in Vol. 2, p. 51). Exhibit 12 is a photograph of Appellant's property taken in October, 2016 (as identified in Vol 2, p. 152–153). This claim is not about an error or omission in the record and is not valid.

In his response, Mosser states,

> When we look to the testimony that the Judge claims provides the evidence that this is a "photograph of Appellant's property taken in October 2016" no such testimony is present in the pages referenced by the Judge (152-153). However, the witness on page 146, while testifying on Exhibit 12 (as confirmed by the Judge several years before) he is able to "point out on 12 where [the right of way marker] is." 20210310. RR2,146.

23

Volume two of the reporter's record filed in this cause states, on pages 152–-53:

Q. (By Mr. Stutes.) And with regard to Exhibit 12, does that accurately represent what you saw on the property when you were at the pro -- at Mr. Laza's property in August of 2016 -- in October -- I'm sorry -- of 2016?

A. Yes.

Mosser plays fast and loose with his interpretation of the record. The record he relies on in support of his allegation is a record that was filed in this Court on March 10, 2021, prior to the time the trial court entered its findings as to the record. Volume two of the March 10, 2021, record includes the same testimony as volume two of the record filed in this Court on December 14, 2021. It appears as if, though, the page numbers do not precisely correspond in each of these volumes due to a difference in font size. The same testimony quoted above as appearing on pages 152 through 153 of volume two of the December 14, 2021, record appears on page 149 of volume two of the March 10, 2021, record.

Further, in volume two of the March 10, 2021, record the witness testified, on pages 145 through 146:

Next to the driveway approach on the lower left-hand side, there's piece of concrete with a -- probably a brass circle in it that is a TXDOT right of way marker, or -- right -- establishing that's the Right-of-way line for the highway --

THE COURT: This is on 11?

MR. STUTES: -- 11 and 12.

THE WITNESS: I'm sorry. 12. 12.

MR. MOSSER: I'm going to object. He's not qualified to determine that, and I doubt that he's a surveyor, so I don't think he can make that determination, Judge. He doesn't have the credentials.

24

This precise testimony also appears in volume two of the December 14, 2021, record on page 149. The point is, even though Judge Phifer was referring to the later version of the record at the hearing rather than the version Mosser points to in his response, both records include the same testimony. Judge Phifer had all of the testimony before him to enable him to make a determination as to the exhibits in this case. The fact is, Judge Phifer determined that exhibit 12 is a photograph of appellant's property taken in October 2016. That is precisely what the testimony on pages 152 through 153 of volume two of the December 14, 2021, reporter's record states. That is also precisely what the testimony on page 149 of volume two of the March 10, 2021, reporter's record states. If Mosser believed that this was not the proper exhibit as identified by the testimony, he simply should have pointed that out to the trial court.

Instead, Mosser chose to make the bold and factually unsupported statement that the trial court changed the testimony of the witnesses, which he claims is a felonious act. We conclude that, because Mosser has failed to provide factual support for this statement, Mosser's statement violates Rule 8.02(a) of the Texas Disciplinary Rules of Professional Conduct, *see* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 8.02(a) *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A, and admonishment number 3 of our admonishment order and is therefore sanctionable.

**5.** **"This Court has determined that** *unnecessary expenditure of judicial resources* **and** *spurious ad hominin [sic] attacks on counsel for Appellant***, without evidence, factual hearings, or testimony,** *make more sense than addressing the jurisdictional issues at the outset of this matter***."** (Emphasis added).

This statement appeared on the last page of Laza's brief, in the prayer. In his response to our show cause order, Mosser explained that this statement is a response to the following language in this Court's admonishment order:

> On December 6, 2021, Mosser made accusations regarding this Court's responsibility for the May 2020 ransomware attack that affected not only this Court, but all appellate courts, the Texas Court of Criminal Appeals, and the Texas Supreme Court. He inappropriately suggested that someone from this office caused the statewide ransomware attack by watching "porn" on a state computer. Mosser also used profanity while speaking with the clerk during this telephone conversation.

Mosser claims that this statement is a spurious *ad hominem* attack on him. He bases this claim on the assertion that this Court's clerk's office denied that he ever made such statements.

Again, context is important. On January 26, 2022, Mosser emailed the clerk of this Court, stating, "In light of the Court's order that nothing in this matter has been sealed under Rule 76a, please provide me with copies of all the email correspondence the Court or its staff has had with any party concerning this case." In response to that email, our clerk emailed Mosser, also on January 27, 2022, stating, "Copies of the email correspondence you requested are attached." As we explained earlier, the emails our clerk sent to Mosser were emails between the clerk's office and the district court coordinator and the district clerk regarding the scheduling of the evidentiary hearings in the trial court. After Mosser received that information, Mosser responded,

26

So you have no recordings or any other communications that are not publicly available online? Such as: "MS. VICK: This is Susan Waldrip Vick. I've got a letter from the court of appeals, March the 10th, 2021, where it was filed and then they came back and wanted the index changed, so Volumes 2, 3 and 4, and the court of appeals said they would pull everything and refile." Nothing from Ms. Vick and no recordings of any calls?

Our clerk responded, "We do not have anything else."

Nowhere in the email chain set forth above does the clerk deny having received any telephone calls from Mosser on December 6, 2021.

Mosser also attached the case events sheet from our computer data base in support of his claim that the clerk's office denied that he ever made the statements set forth in our admonishment order as quoted above. The case events sheet documents several events noted as "telephone call received." Apparently, Mosser relies on the absence of such a documented "telephone call received" on December 6, 2021, in support of his claim that he did not call the clerk's office on that date. As a matter of course, the "event type" listed in the case events sheet typically documents only those telephone calls or emails that pertain to filing dates, securing the record, monitoring the status of an order to the trial court, or missed deadlines. Our clerk's office does not document every call regarding case inquiries or complaints. Mosser's December 6, 2021, telephone call was not listed in this Court's case events sheet because it did not pertain to the matters typically documented, as described above. Instead, during Mosser's telephone call, he used profanity and made an improper accusation regarding the ransomware attack. In any event, the absence of such documentation of that telephone call is not, as Mosser suggests, a denial by our clerk's office that the call happened.

27

We conclude that the statement that this Court made spurious *ad hominem* attacks on Mosser is without a basis in fact. We further conclude that Mosser has not attempted to provide a factual basis for his assertions that this Court has unnecessarily expended judicial resources in personally attacking him rather than addressing the jurisdictional issues at the outset of the matter. Mosser's opinion of the manner in which this case has proceeded does not provide a factual basis for a statement regarding the intent of this Court. Both statements violate Rule 8.02(a) of the Texas Disciplinary Rules of Professional Conduct, *see* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 8.02(a) *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A, and admonishment number 3 of our admonishment order and are therefore sanctionable.

**6.** **"Combined with the *atrocious conduct of the individual masquerading as a judge* . . . and the sheer volume of error attributed to the actions of this court and the lower court, this decision cannot stand . . . ."** (Emphasis added).

In this final statement, Mosser accuses Judge Phifer of committing atrocious conduct and of masquerading as a judge. This statement appeared on the last page of Laza's brief, in the prayer.

In his response to our show cause order, Mosser questions why this language would strike the court's ire, as the Texas Court of Criminal Appeals has made this observation:

> There can be no court, in a legal sense, without a judge, and there can be no judge except as he may be elected and chosen under the Constitution and agreeably to law. It therefore results that, however eminent in learning and however fair in fact may be the person who presides over the trial, *unless he is in a legal sense a district judge the gathering masquerading as a court becomes of no higher dignity than the same number of respectable gentlemen gathered by chance on the street corner*.

*Oates v. State*, 56 Tex. Crim. 571, 584 (1909) (emphasis added).

28

In the *Oates* case, the district judge was disqualified.  The special judge who tried the case was appointed by the governor, who lacked constitutional or statutory authority to make the appointment.  As a result, the appointment was void.  There can be no claim in this case that Judge Phifer was not properly assigned by the administrative judge to try this case.

To "masquerade" is to "assume the appearance of something one is not."  *Masquerade*, Merriam-Webster.com,  https://www.merriam-webster.com/dictionary/masquerade (last visited Nov. 9, 2022).  The statement that Judge Phifer masqueraded as a judge is without a factual basis and violates Rule 8.02(a) of the Texas Disciplinary Rules of Professional Conduct, *see* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 8.02(a) *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A, and admonishment number 3 of our admonishment order and is therefore sanctionable.

We have previously explained, under item number one above, why there is no factual basis for the statement that the trial court exhibited atrocious conduct.  As a result, we find that this same statement listed under item six is likewise without a factual basis and violates Rule 8.02(a) of the Texas Disciplinary Rules of Professional Conduct, *see* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 8.02(a) *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A, and admonishment number 3 of our admonishment order and is therefore sanctionable.

Each of the statements listed above in items one through six likewise violate the preamble of the Texas Lawyer's Creed, which states, "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials."  TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. preamble ¶ 4, *reprinted in* TEX. GOV'T CODE ANN.,

29

tit. 2, subtit. G, app. A. As was true in Judge Mazzant's court, Mosser's conduct here "demonstrate[s] the utmost disrespect." *Jabary*, 325 F.R.D. at 199.

## VII. Appropriate Sanctions

As outlined above, Mosser made factually unsupported and disrespectful comments regarding the trial court, the administrative judge, and this Court. One of Mosser's comments accused the trial court and the court reporter of criminal conduct, and one of his comments accused the trial court of a separate instance of criminal conduct.

Over four years ago, Judge Mazzant sanctioned Mosser $3,000.00 for similar conduct. Judge Mazzant also ordered Mosser to attend continuing legal education on ethics. Given Mosser's continued sanctionable conduct despite having been previously sanctioned, we conclude that a sanction in the amount of $3,000.00 was not sufficient to persuade Mosser to refrain from engaging in similar conduct in the future. As a result, and because of the level of disrespect Mosser has demonstrated to the trial court, the administrative judge, and this Court, we find a monetary sanction of $600.00 for each of the six identified statements appropriate to deter further conduct in the future. We also note Mosser's willful failure to personally attend the show cause hearing on October 31, 2022, but decline to sanction that willful conduct, since he did cause an extensive written response to be filed and did arrange for his law partner, James Mosser, to appear at the hearing.

It is therefore ORDERED that Nicholas D. Mosser pay monetary sanctions in the amount $3,600.00 for the statements made in briefing to this Court as outlined above. Mosser is

30

ORDERED to pay the entirety of the monetary sanctions to this Court within ten (10) days from the date of this Order.

Further, Mosser's disparaging and factually unsupported remarks about the trial court, the administrative judge, and this Court raise a substantial question about Mosser's "honesty, trustworthiness or fitness as a lawyer." TEX. CODE JUD. CONDUCT, Canon 3D(2), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B. As a result, we are bound by Canon 3D(2) of the Code of Judicial Conduct to inform the Office of the General Counsel of the State Bar of Texas of this matter. *See Johnson*, 948 S.W.2d at 841.

We, therefore, ORDER the clerk of this Court to promptly forward to the Office of the General Counsel of the State Bar of Texas, for investigation and any other action it may deem necessary, a copy of (1) our order of admonishment dated January 26, 2022, (2) our notice and show cause order dated September 16, 2022, and (3) this order.

BY THE COURT

Date:   December 5, 2022